UNITED STATES of America, Plaintiff-Appellee,

v.

James REYNOLDS, Defendant-Appellant.

No. 73–1393.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 11, 1973.

Decided April 30, 1974.

---

---

Martin J. Miller, Columbus, Ohio, for defendant-appellant; Robert P. Moses (court appointed) Moses & Miller, Columbus, Ohio, on brief.

William D. Beyer, Asst. U. S. Atty., Cleveland, Ohio, for plaintiff-appellee; Frederick M. Coleman, U. S. Atty., on brief.

Before WEICK, Circuit Judge, O'SULLIVAN, Senior Circuit Judge, and ALLEN,* District Judge.

WEICK, Circuit Judge.

Reynolds has appealed from his conviction by a jury on an indictment charging him with robbery, by force and violence and by intimidation, of the Ravenna Road branch bank of the Twinsburg Banking Company, a federally insured bank, and putting in jeopardy the lives of employees of the bank with a handgun, in violation of 18 U.S.C. § 2113(a) and (d).

The bank robbery took place on August 31, 1972, at 10:30 o'clock a. m., when three armed robbers, wearing Afro-wigs and nylon stockings drawn over their faces, entered the bank. They had driven to a lot near the bank in a white Buick automobile which they had stolen on the same day from an employees' parking lot at the Southgate Shopping Center. The stolen automobile belonged to an employee of May Department Stores of Cleveland, who worked at said shopping center.

Upon entering the bank the robbers ordered everyone to lie down on the floor. Two of the robbers vaulted over the bank counter, entered tellers' cages, emptied the cash therefrom, and put the cash in a pink pillow case. The robbery took place in only two minutes, and the robbers departed with $13,504 in cash.

During the course of the robbery a surveillance camera was activated and was in operation, which alerted the police.

The Assistant Bank Manager had observed the white Buick as it approached the bank. When the films had been developed he identified one of the robbers as Jimmie Lee Williams, with whom he had attended school. Williams was arrested and he confessed. Williams implicated Reynolds and Reynolds' seventeen-year-old brother Paul as the other two robbers. Williams entered a plea of guilty to robbery of the bank, but had not been sentenced at the time of the Reynolds trial. Williams testified as a Government witness.

Williams testified that he was twenty-one years old; that Reynolds was a cousin of the husband of his sister, Mrs. Geraldine Green; that he had known Reynolds for some time; and that Reynolds was his friend. He testified that

---

* The Honorable Charles M. Allen, Judge, United States District Court for the Western District of Kentucky, sitting by designation.

Reynolds and his (Reynolds') younger brother Paul had come from Columbus on the previous day and visited him at his apartment in Twinsburg; that Reynolds told him that he (Reynolds) needed money to pay his lawywer who was defending him on another armed robbery charge; and that they planned the robbery of the Twinsburg Bank.

Williams further testified that on the morning of the robbery they drove to the Southgate Shopping Center, where they stole a white Buick automobile; that from there they drove the Buick to a wooded area; and that Williams left and went to the home of his sister, Geraldine Green, a short distance away, and arranged with her to go to the bank to ascertain whether everything was clear. The sister went to the bank and obtained five dollars worth of quarters, allegedly for use in a nearby laundromat. After going to the bank the sister drove her car to the wooded area where her brother and the two Reynolds brothers were waiting in the stolen Buick. The sister reported to them that everything was clear at the bank. The three men then left for the bank and robbed it. After robbing the bank they departed in the white Buick, and on their way back to the wooded area they dropped their wigs, stocking masks, and some articles of clothing in a field. When they arrived at the wooded area Williams wiped the inside of the car with a wet cloth. They left the Buick in the wooded area, and then drove in another car to Williams' apartment where they divided the stolen money.

The FBI was called into the case and recovered the stolen Buick on the day of the robbery. They also recovered the wigs, stocking masks and other articles of clothing, which were offered in evidence at the trial.

A Special Agent of the FBI obtained twenty-seven latent finger prints from the outside of a door and a fender of the Buick automobile. Three of the prints, namely, one finger print and two palm prints, taken from the car, were from the finger and palm of Reynolds.

At the trial the Assistant Bank Manager and a woman teller testified as to the occurrences at the bank. They testified also as to the height, weight, and apparent ages of the three bank robbers. Their descriptions involved a large man, who was apparently the leader, a middle-sized man, and a small man.

The most convincing, incriminating evidence, however, was the three prints taken of the finger and palm of Reynolds' hand, taken from the door and fender of the stolen car.

Reynolds had an alibi defense; he claimed to have been in Columbus, Ohio, at the time of the robbery. Reynolds offered the testimony of some of his relatives and friends and also that of a used-car dealer in Columbus and the dealer's son. The relatives and friends were not clear about the date. The used-car dealer and his son testified that Reynolds and his minor brother were at the used-car lot between the hours of 2:00 and 4:00 o'clock, p. m., making and closing a deal for the purchase of a 1964-Cadillac Fleetwood automobile, for which the minor brother paid two thousand dollars in cash; and that they left the used-car lot about 5:00 o'clock, p. m.

Columbus is about 136 miles from Twinsburg. The jury could well have found from the evidence that the Reynolds brothers could have driven from Twinsburg to Columbus after the robbery in ample time to have made and completed the purchase of the Cadillac.

Reynolds testified in his defense. He made no attempt to explain how the prints from the finger and palm of his hand happened to be on the door and fender of the automobile stolen from Southgate Shopping Center. The employee whose car was stolen lived at Walton Hills, a suburb of Cleveland. The robbers were in possession of the stolen car at the Shopping Center and at Twinsburg only a short time on the day of the robbery. The car was recovered by the FBI on the same day of the robbery, when the twenty-seven fingerprints were lifted therefrom. Three of these prints were mute, uncontradicted

testimony of Reynolds' involvement in the robbery.

On appeal the only error assigned was the admission by the District Court of evidence of the custodial interview between a Special Agent of the FBI and Reynolds, at a Columbus, Ohio jail, during the course of which Reynolds made an incriminating admission.

The District Court conducted an evidentiary hearing on a motion to suppress, at which FBI Special Agent Thomas Decker testified. In substance Decker testified that initially he did not go to interview Reynolds regarding the Twinsburg Bank robbery for which he was under investigation, but rather regarding another bank robbery; and that he had advised Reynolds of his rights by reading to him the advice of rights form. He also asked Reynolds to read the form and to sign it if he desired. Reynolds said that he "understood this form and he stated he would answer questions but would not sign anything." Decker also told Reynolds that he had the right to have counsel present and that he could terminate the interview at any time. Decker had interviewed Reynolds at least on two other occasions, and had also interviewed members of Reynolds' family.

Decker told Reynolds that he wanted to interview him regarding the bank robbery of Ohio National Bank in Columbus, Ohio, on August 10, 1971, and regarding the Twinsburg Bank robbery on August 31, 1972.

With respect to the Twinsburg Bank robbery, Decker testified:

> He at first denied having any knowledge regarding the robbery, and we talked for a while about the robbery. And at one point I asked him, "Why did you take your 17 year old brother Paulie with you on this particular bank robbery?" And Mr. Reynolds lowered his face in his hands and stated that "I shouldn't have taken Paulie with me on that job." (Tr. p. 7)

Reynolds testified that at his previous preliminary hearing in Columbus, Ohio, his attorneys had advised him not to talk with anyone about the case unless they were present. He denied that he made the statement, "I shouldn't have taken Paulie with me on that job," and stated that he never called his brother, "Paulie." Reynolds also called two relatives and a close friend, who testified that they never heard him call his brother, "Paulie."

Robert Moses, court-appointed counsel for Reynolds, testified that he had advised Reynolds not to talk with anyone about the case in his absence, and had made such a request at the previous preliminary hearing before the Magistrate in Columbus, at which Special Agent Watson was present.

The District Court held that the rule in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), had been fully complied with and denied the motion to suppress.

No motion for judgment of acquittal was made by Reynolds at the close of the Government's case, or at the close of all of the evidence. No objection was made to the Court's instructions to the jury.

Upon consideration of the briefs and of arguments of counsel we were of the opinion that although the District Court had found that the warnings required by Miranda had been complied with, we needed additional factual findings before passing upon the merits of the case. We therefore entered an order remanding the case to the District Court to adopt findings of fact and conclusions of law with respect to what actually took place at the interrogation, to resolve issues of credibility of the witnesses and to determine whether Reynolds voluntarily waived any of the rights accorded to him by Miranda.

The District Judge complied fully with our mandate and adopted findings of fact and conclusions of law, a copy of which is appended hereto.

We are satisfied that the findings of fact adopted by the District Court are supported by substantial evidence and are not clearly erroneous. The findings were based largely on credibility resolutions. His conclusions of law are correct.

We are not dealing here with a novice, bur rather with a knowledgeable defendant who had a criminal record of state as well as federal offenses. The interview which took place was a short one, lasting only thirty-nine minutes. Reynolds knew exactly the purpose of the interview, namely, two bank robberies. There was no cajoling, no coercing, no threatening or promising of any kind. Reynolds knew that he did not have to give any interview; that he could stop the interview at any time; and that he could have counsel present. With all of that knowledge he decided to talk in the absence of his counsel.

The fact that Reynolds refused to sign the waiver of rights form does not ipso facto render inadmissible all further statements made by him. Such "refusal . . . may indicate nothing more than a reluctance to put pen to paper under the circumstances of custody." United States v. McDaniel, 463 F.2d 129, 135 (5th Cir. 1972). The defendant may very well wish to discuss the matter with his detainers in order to exculpate or explain himself. All of the facts and circumstances of the detention must be looked to in order to determine whether the refusal to sign was tantamount to a refusal to discuss. United States v. Devali, 462 F.2d 137, 141 (5th Cir. 1972).

The evidence is clear that although Reynolds did not want to sign the waiver, he was willing to talk with Special Agent Decker.

There was also substantial evidence that Reynolds knowingly and voluntarily waived his right to counsel at the interview. United States v. Dority, 487 F.2d 846, 848 (6th Cir. 1973); United States v. Springer, 460 F.2d 1344, 1353 (7th Cir. 1972); Arrington v. Maxwell, 409 F.2d 849 (6th Cir. 1969); Coughlan v. United States, 391 F.2d 371 (9th Cir. 1968).

We think it would have been preferable for Reynolds to have his counsel present at the interview, but this was a matter solely for him to decide. He made that decision with full knowledge of his right to counsel. It is not for us to upset credibility findings made by the District Judge on contradictory testimony.

Whether Reynolds made the incriminating statement was a question properly submitted for determination by the jury.

Affirmed.

## APPENDIX

### THE UNITED STATES DISTRICT COURT THE NORTHERN DISTRICT OF OHIO EASTERN DIVISION

Case No. CR72–765

United States of America, *Plaintiff*,

v.

James Reynolds, *Defendant*.

### ORDER

(Filed December 13, 1973)

KRUPANSKY, District Judge.

In compliance with the mandate of the United States Court of Appeals for the Sixth Circuit as set forth in its Order entered November 20, 1973, remanding this case for an expression of findings of fact and conclusions of law, the Court has reviewed and considered the transcript of evidence concerning the Motion to Suppress incriminating statements made by the defendant during interrogation in conjunction with the standards set forth in Miranda v. Arizona, 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and 18 U.S.C. § 3501(b).

In support of its original decision that defendant was not denied his constitutional rights as defined by the pronouncements of *Miranda, supra,* and that he was fully advised of and under-

stood those rights before waiving same, the Court finds that:

1. Special Agent Thomas B. Decker, upon arriving at the Franklin County Jail on October 4, 1972, identified himself to the defendant as a member of the Federal Bureau of Investigation;

2. Defendant Reynolds was informed of the subject matter of the interrogation, namely, a bank robbery in Columbus, Ohio, on August 10, 1971, and a bank robbery in Twinsburg, Ohio, on August 31, 1972;

3. Agent Decker produced and read to Reynolds an advice of rights form, informing him of all his constitutional rights including the right to remain silent; that anything he said could be used against him; the right to consult an attorney, and the right to have an attorney present during questioning;

4. Defendant admitted understanding his rights as is apparent from the following:

   A. . . . And after the sergeant left, then Mr. Decker asked me did I understand my rights and I told him yes, which I understood it as far as not saying anything, because I understood that anything—that anything I said could be held against me, I understood that.

   But as far as understanding my full rights, I didn't, you know.

   Q. Did you know that anything you said could be used against you?

   A. Yes. (Transcript at 19).

5. The advice of rights form was presented to him for signature, and the defendant, aware of its contents refused to sign it;

6. Defendant did not request to terminate the interrogation at any time;

7. Defendant conceded that he did not request the presence of counsel at any time during the course of the interview;

8. Defendant, with the exception of one alleged self-incriminating statement, denied any participation in the robberies.

Apparent from the foregoing, there is an absence of a conflict in the testimony as to any violation of defendant's rights within the expression of *Miranda, supra.* The sole issue of fact arising from the interview was that arising from the conflicting testimony of defendant and the agent as to whether or not the self-incriminating statement was or was not in fact made as testified to by the agent and denied by the defendant. This factual question was properly presented to the jury for its determination.

Reflecting upon the behavior of the witnesses on the witness stand and considering their manner of testifying; the accuracy of their memories; their candor or lack of candor; their intelligence; their interest in the outcome of the proceedings together with all other circumstances surrounding their testimony and applying these tests, the Court elects to accept the forthright testimony of Agent Decker in lieu of that of defendant and concludes that:

1. The defendant was adequately advised of his constitutional rights under *Miranda, supra,* and Mock v. Rose, 472 F.2d 619 (6th Cir. 1972), cert. denied, 411 U.S. 971, 93 S.Ct. 2165, 36 L.Ed.2d 693 (1973);

2. Defendant fully understood his constitutional rights;

3. The Government has sustained its burden in establishing that the defendant knowingly, intelligently and voluntarily waived his right to remain silent and right to consult an attorney and have an attorney present during questioning, notwithstanding his failure to sign the advice of rights form.

*See, Miranda, supra* at 475–476, and 479; United States v. Tafoya, 459 F.2d 424, 427–428 (10th Cir. 1972); United States v. Stevens, 445 F.2d 304 (6th Cir. 1971), cert. denied, 404 U.S. 945, 92 S.Ct. 298, 30 L.Ed.2d 260 (1971); United States v. Sisk, 411 F.2d 1192 (6th Cir. 1969), cert. denied, 396 U.S. 1018, 90 S.Ct. 584, 24 L.Ed.2d 509 (1970).

Furthermore, the agent was under no constitutional duty to refrain from interrogating the defendant out of the presence of his attorney, since the right to have counsel present was knowingly and voluntarily waived. See United States v. Dority, 487 F.2d 846 (6th Cir. 1973) wherein the U. S. Court of Appeals for the Sixth Circuit recently held:

Clearly, the agent was required to advise Dority of his rights under the fifth and sixth amendments, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), but just as clearly the appellant may waive his right to counsel. 384 U.S. 475–476, 86 S.Ct. 1602. We find that, at least for the period of time in which he gave his statement, appellant knowingly and voluntarily waived his right to counsel in connection with the federal investigation. Even if a lawyer had been appointed to represent appellant on the federal charges, the agent was under no constitutional duty to refrain from talking with appellant out of the presence of his attorney, since the right to have counsel present was knowingly and voluntarily waived. United States v. Springer, 460 F.2d 1344, 1353 (7th Cir. 1972); Coughlan v. United States; 391 F.2d 371 (9th Cir. 1968).

4. The incriminating admission, if in fact any was made, was voluntarily made and therefore admissible into evidence.

Accordingly, the Motion to Suppress is hereby denied.

IT IS SO ORDERED.

/s/ ROBERT B. KRUPANSKY
United States District Judge