**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William John BAGLEY,
Defendant-Appellant.**

No. 75–4046.

United States Court of Appeals,
Fifth Circuit.

Aug. 16, 1976.

R. Bruce Kirwn, Federal Public Defender, Ralph Washington, Asst. Federal Public Defender, Atlanta, Ga., for defendant-appellant.

John W. Stokes, U.S. Atty., Robert A. Boas, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before GODBOLD, McCREE[*] and TJOFLAT, Circuit Judges.

McCREE, Circuit Judge.

William John Bagley appeals from a jury conviction for possession with intent to distribute heroin, a schedule I controlled substance. 21 U.S.C. § 841(a)(1). He was sentenced to be placed in the custody of the Attorney General for 7 years and 6 months, to be followed by 3 years of mandatory parole. Appellant contends that the trial court erred in excluding a hearsay statement which he claims was admissible as a statement against the declarant's penal interest. We affirm.

On April 1, 1975, the time of the offense charged in the indictment, Bagley was confined in the U. S. Penitentiary in Atlanta, Georgia. He was stopped by a prison guard, and was subjected to a strip search that revealed a concealed package of heroin under his clothing. At trial for possession with intent to distribute heroin, he testified that another inmate, Schropshire, had given him the package of heroin at the handball court, and had told him that it contained Valium capsules. Bagley testified that Schropshire asked him to deliver the Valium to a friend in Cellblock B, and that he placed the package in his athletic supporter because he had been playing handball in gym clothes without pockets. Bagley stated that he was on his way to Cellblock B when he was stopped and searched.

Three inmates testified that they had been playing handball with Bagley, and that they had heard Schropshire ask Bagley to deliver some Valium capsules. Two other inmates testified that earlier on the same day Schropshire had asked them to deliver some Valium, but each stated that he had refused because he did not live in Cellblock B. A sixth inmate witness testified that he had overheard one of these conversations.

Bagley also offered the testimony of a seventh inmate, Bobby Duke. Duke had been Schropshire's prison cellmate, and he was expected to testify about a conversation that he had with Schropshire on the day that prison officials discovered the heroin in Bagley's possession. This proffered testimony was that Schropshire told Duke that he had asked Bagley to deliver some Valium, but then discovered that he had given Bagley a package of heroin instead. Duke was also expected to testify that after hearing of this mistake, he rushed out in an unsuccessful attempt to find Bagley and to warn him. Schropshire was not available as a witness because he died approximately one month after the discovery of the heroin, and before the trial began.

Rule 804 of the Federal Rules of Evidence governs the exception to the hearsay

* Of the Sixth Circuit, sitting by designation.

rule for declarations against interest. Rule 804(b)(3) provides that if the declarant is unavailable, the hearsay rule does not require the exclusion of a statement against interest:

(3) **Statement against interest.** A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissable[1] unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Thus the two questions presented here are (1) whether Schropshire's statement so far tended to subject him to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true, and (2) whether the corroborating circumstances clearly indicate the trustworthiness of the statement.

The trial court held that the proffered testimony failed to meet either of the two requirements under 804(b)(3):

THE COURT: All right. I don't believe that this is so far contrary to declarant's interest or so far tendered [sic] to subject him to criminal liability simply because of the circumstances under which it was rendered, that is to a close friend and cell mate, and that he would not have made the statement to this witness unless he believed it to be true. I think under the circumstances he could have only made this statement to this man believing it not to be true.

Secondly, I don't believe that there, that the corroborating circumstances clearly reveal the trustworthiness of the statement.

■ We hold that at the time Schropshire's statement was made it was suffi-

ciently inculpatory that a reasonable person in his position would not have made the statement unless he believed it to be true. However, we also hold that the trial judge's determination that the surrounding circumstances did not clearly indicate the trustworthiness of the statement was not clearly erroneous, and we therefore affirm.

■ The threshold question is whether the statement so far tended to subject Schropshire to criminal liability that a reasonable man in his position would not have made the statement unless he believed it to be true. We think that the district court erred in holding that the statement was not against Schropshire's penal interest. The proffered statement conceded Schropshire's guilt of knowing possession of heroin-a felony punishable by imprisonment for not more than 15 years, or a fine of not more than $25,000, or both. 21 U.S.C. § 841(b)(1)(A). We do not think that a reasonable man would falsely admit the commission of a serious crime to his cellmate, knowing that there was a chance, even if slight, that this admission could be used to convict him and subject him to such severe penalties. The fact that the statement was made to a friend and cellmate has no relevance to the determination whether the statement was against the declarant's penal interest. However, the identity of the person to whom the statement was made, and the circumstances in which the disclosure was made are to be considered in assessing the trustworthiness of the statement. Accordingly, we think that the first requirement of Rule 804(b)(3) is met.

Rule 804(b)(3) also requires that corroborating circumstances "clearly indicate" the "trustworthiness" of the statement. The trial court held that the circumstances did not "clearly reveal" trustworthiness.

On appeal, the parties have not directed us to any authority identifying the standard of review to be applied to this determination, and we have found no cases clearly instructive on this question. Whether the statement was against the declarant's penal

---

1. So in original. Probably should read "admissible."

interest presented a question of law. However, consideration of the statement's trustworthiness will necessarily require review of findings of fact and will also require review of the trial court's application of a legal standard to these facts.

This situation is analogous to the review of a trial court's preliminary determination of the voluntariness of a confession. It is also like the review of a determination that evidence challenged as having been obtained in violation of the Fourth Amendment is admissible because there was consent to a search, or the search was incident to a valid arrest, or was dictated by exigent circumstances.

In reviewing a trial court's determination that a confession was voluntary, this circuit has applied the clearly erroneous standard. *United States v. Maxwell,* 484 F.2d 1350, 1352–53 (5th Cir. 1973); *United States v. Montos,* 421 F.2d 215, 219 n.1 (5th Cir.), *cert. denied,* 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532 (1970). This is in accord with the rule in other circuits, *e. g. United States v. Reynolds,* 496 F.2d 158, 162 (6th Cir. 1974); *United States v. Crook,* 502 F.2d 1378, 1380 (3d Cir. 1974), *cert. denied,* 419 U.S. 1123, 95 S.Ct. 808, 42 L.Ed.2d 823 (1975). The Fifth Circuit, and others, have also applied the clearly erroneous test in reviewing a trial court's finding that there was consent to a warrantless search. *United States v. Horton,* 488 F.2d 374, 380 (5th Cir. 1973), *cert. denied* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974); *United States v. Cepulonis,* 530 F.2d 238, 243–44 (1st Cir. 1976); *United States v. Griffin,* 530 F.2d 739, 742 (7th Cir. 1976).

■ The absence of express findings of fact by the trial court does not prevent the application of this test in appellate review of preliminary evidentiary rulings. For example, in *Scarbeck v. United States,* 115 U.S.App.D.C. 135, 317 F.2d 546 (1962), *cert. denied,* 374 U.S. 856, 83 S.Ct. 1897, 10 L.Ed.2d 1077 (1963), the defendant argued that his confession was coerced and that the rule of *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) had been violated. The trial court, which ad-

mitted the confession, made no findings of fact or law. The court of appeals held:

> . . . we must uphold the ruling of the trial court if there is any reasonable view of the evidence that will support it. 317 F.2d 562.

In *United States v. Lindsay,* 165 U.S.App. D.C. 105, 506 F.2d 166, 170 (1974) the D.C. Circuit applied this rule to determine whether the evidence could support a finding of exigent circumstances, consent, or a search incident to a valid arrest:

> We must determine whether the police's entry was justified by the "exigencies of the situation" or was constitutionally impermissible because of their failure to obtain prior judicial endorsement. *See McDonald v. United States,* 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948). *See also Coolidge v. New Hampshire,* 403 U.S. 443, 454–455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). If, while denying appellant's motion to suppress on this issue, the trial judge had made written findings, our function would have been to determine only if those findings were clearly erroneous. *See United States v. Montos,* 421 F.2d 215, 219 n.1 (5th Cir.), cert. denied, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532 (1970). Since findings were not made, we should uphold the rulings of the trial court if there is any reasonable view of the evidence to support it. *See Scarbeck v. United States,* 115 U.S.App.D.C. 135, 317 F.2d 546, cert. denied, 374 U.S. 856, 83 S.Ct. 1897, 10 L.Ed.2d 1077 (1963).

> ■ The issue before us, therefore, requires us to exhaust the various combinations of factual alternatives and legal theories presented. Our standard of review obligates us to focus on both Officers Stallings' and Sabella's versions of the police entry and on whether the trial court's legal conclusion is sustainable under any recognized fourth amendment doctrine. [Footnotes omitted.]

■ We think that a similar rule should be applied in reviewing determinations whether the trustworthiness of a hearsay statement is clearly indicated. Since the

trial court made no findings on this subject, we must determine whether any reasonable view of the evidence supports its ruling.

In this context, we think that the term trustworthiness has two distinct elements. In order for a declaration against penal interest to be trustworthy evidence, the statement must actually have been made by the declarant, and it must afford a basis for believing the truth of the matter asserted. As we will demonstrate, the proffered statement here clearly affords a basis for belief in its truthfulness if it was, in fact, made. Schropshire was the one person best suited to know whether he had been in possession of both a package of Valium and another of heroin, and whether he had mistakenly given the heroin to the unsuspecting Bagley. Moreover, the record is completely devoid of evidence of any motive for Schropshire to misrepresent this matter to Duke. At the time that the statement was purportedly made, neither Duke nor Schropshire could have known that Bagley had been searched and that the heroin had been discovered. Schropshire therefore could not have intended to help Bagley, and he had nothing to gain for himself by admitting to his cellmate that he had been in illegal possession of heroin which he had mistakenly given to the unsuspecting Bagley. In these circumstances, the proffered statement must be viewed as trustworthy in the sense of being reliable proof of the matter asserted.

However, the draftsmen of the rule were more concerned with the second element of reliability—whether a statement offered to exculpate an accused was actually made. The legislative history of this rule indicates that Congress agreed with the Supreme Court that as a general matter statements against penal interest, like those against pecuniary interest, "possess adequate assurances of reliability and should be admissible." H.R.Rep. No. 93–650, 1974 U.S.Code Cong. & Admin.News p. 7089. However, the House Committee stated that "statements of this type tending to exculpate the accused are more suspect and so should have their admissability conditioned upon some further provision ensuring trustworthiness." 1974 U.S.Code Cong. & Admin. News, p. 7089. The committee deemed the Supreme Court's proposal to require corroboration *simpliciter* to be "ineffective" to insure trustworthiness, since even the accused's own testimony might meet this test, and the Committee inserted the language requiring that corroborating circumstances "clearly indicate the trustworthiness of the statement." Finally, we note the admonition of the Advisory Committee on the Proposed Rules that the requirement of corroboration should be "construed in such a manner as to effectuate *its purpose of circumventing fabrication*." Notes of the Advisory Committee on Proposed Rules, reprinted in 28 U.S.C. F.R. of Evidence following Rule 804, at 697. [Emphasis added.]

With these principles in mind, we must determine whether there is a reasonable view of the evidence that will support the trial court's ruling that the reliability of the statement was not established. The trial court's ruling can be interpreted as its determination that Schropshire did not make the statement attributed to him, and that Duke fabricated it in order to assist Bagley in his defense. We conclude that a reasonable view of the evidence supports this implicit finding. Only one person, Duke, was present when Schropshire allegedly made the statement. Duke was the declarant's friend and cellmate, but by the time Duke first testified about the statement, his friend was already dead. Accordingly, Duke could not incriminate Schropshire by this effort to exculpate Bagley. The fact that Duke made no mention of Schropshire's statement to anyone until after Schropshire's death detracts from the statement's trustworthiness. Likewise, it appears that none of the other six inmates who testified about Schropshire's attempts to procure someone to deliver Valium ever mentioned this transaction until shortly before Bagley's trial. Moreover, although we do not rest our opinion on this ground alone, we observe that each of the critical defense witnesses was a prison inmate who had been convicted of a crime. The trial

**168**

judge was entitled to consider this factor, as well as witness demeanor, in determining whether to credit their testimony sufficiently to hold that the trustworthiness of the proffered statement was clearly established. The U. S. Attorney attacked the credibility of each of these witnesses in an attempt to show that Bagley had recently fabricated the story that Schropshire had asked him to deliver Valium, but had apparently given him heroin by mistake. On cross-examination, the U. S. Attorney elicited at least some minor contradictions among the stories of the various defense witnesses.

■ Accordingly, the trial judge could reasonably have concluded that the trustworthiness of the statement was not clearly indicated, and the judgment will be affirmed.

We are aware that some commentators have taken other views of the proper role of the trial judge's preliminary ruling on admissibility under Rule 804(b)(3). For example, Weinstein states that "[t]he court should only ask for sufficient corroboration to 'clearly' permit a reasonable man to believe that the statement might have been made in good faith and that it could be true." 4 Weinstein's Evidence 804–90. Also, a recent law review note urges that one corroborating circumstance should be sufficient to establish trustworthiness, and that "additional corroborating circumstances should go to the weight of proof rather than its admissibility." Note, "Declarations Against Penal Interest: What Must Be Corroborated Under the Newly Enacted Federal Rule of Evidence, Rule 804(b)(3)?" 9 *Valparaiso U. L. Rev.* 421 , 440 (1975). Although these tests might have been appropriate if Congress had adopted Rule 804 in the form proposed by the Supreme Court requiring simple corroboration of a hearsay statement used to exculpate a criminal defendant, we think that they do not satisfy the language actually adopted that expressed the draftsmen's concern that a more stringent test was necessary to guard against the danger of fabrication. The requirement that the corroborating circum-

stances "clearly indicate" the trustworthiness of the statement should be construed to permit the trial judge, who has the opportunity to judge the credibility of the witness, to exercise discretion in determining whether he is satisfied that the statement is trustworthy. If there was evidence before him from which he could conclude that the statement was not actually made (or would not be reliable evidence of the truth of the matter asserted) his exclusion of the statement should be affirmed.

AFFIRMED.