UNITED STATES of America, Plaintiff-Appellee,

v.

Charles MARQUARDT, Defendant-Appellant.

No. 81–5056.

United States Court of Appeals, Eleventh Circuit.

Jan. 17, 1983.

Certiorari Denied April 18, 1983. See 103 S.Ct. 1793.

Byron B. Mathews, Jr., Miami, Fla., for defendant-appellant.

**1302**

John F. Peyton, Jr., Sonia E. O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before RONEY, TJOFLAT and FAY, Circuit Judges.

TJOFLAT, Circuit Judge:

Charles Marquardt was convicted in the district court of conspiring knowingly and intentionally to distribute cocaine in violation of 21 U.S.C. § 846 (1976) and of knowingly and intentionally using a communication facility, *i.e.,* a telephone, in the commission of a drug-related felony in violation of 21 U.S.C. § 843(b) (1976). Marquardt raises four points on appeal of his convictions. We find no reversible error and, therefore, affirm the convictions.

Marquardt alleges first that the district court erred in denying his motion for a continuance so that counsel who had prepared his case and who was to try it, Dennis Schaefer, could be present during the selection of the jury. Instead, one of Schaefer's partners, Steven Dell, was present during the selection proceedings. Marquardt claims that this attorney was incompetent to select the jury. He argues that the trial court's decision to deny him a continuance forced him to proceed with incompetent counsel during voir dire.

 The decision whether to grant a continuance is "committed to the deliberate discretion of the trial judge." *Gandy v. Alabama,* 569 F.2d 1318, 1322 (5th Cir.1978). The district court clearly did not abuse its discretion in this case. It thoughtfully and carefully decided that Dell was competent to proceed. In fact, Marquardt points to no instance during voir dire in which Dell performed inadequately or in which he was prejudiced by Dell's participation in the proceeding. Moreover, the court delayed the swearing in of the jury until Schaefer made his appearance the following day. This delay allowed Schaefer the opportunity to confer with Dell about the prospective jury and to object to any juror who might be excusable for cause. Schaefer made no such objection, however, and the jury was sworn. Marquardt's first claim accordingly fails.[1]

 Marquardt next claims that the district court erred in denying his motion for a new trial based on the impropriety of the government's rebuttal to his closing argument. Marquardt's closing argument consisted in part of attacks on the credibility of the testimony of a government witness, Ava Lessnee Rodriguez, who had been named in the same indictment as he and who had entered into a plea agreement with the government, that the purpose of the conspiracy was to distribute cocaine.[2] His closing argument consisted also of attempts to persuade the jury to infer from the evidence that the conspirators' purpose was not to distribute cocaine, but to pose as sellers of cocaine in order to "rip-off" the

---

1. Marquardt's contention that the court should have aborted the trial at the outset because Dell was incompetent and thus denied him the right to effective assistance of counsel in violation of the sixth amendment is also without merit. First, Marquardt alleges no prejudice resulting from counsel's alleged incompetency. Second, our review of the record convinces us that Dell performed competently. Prior to the commencement of jury voir dire, the court carefully explained to Dell the ground rules for examining the jurors. Thereafter, Dell acquitted himself well. For example, he excused a prospective juror who was employed by the federal government, one who had a relative on the police force, and one who was retired from the United States Department of Defense.

Marquardt does not contend that he was denied counsel of his choice also in violation of the sixth amendment. Thus, his reliance on *Gandy v. Alabama,* 569 F.2d 1318 (5th Cir. 1978), is misplaced. Indeed, such an argument would be extremely difficult to make in this case for two reasons. First, counsel was appointed rather than retained in this case. Second, Marquardt's attorney, Schaefer, was not the counsel appointed, but rather was a partner of appointed counsel, Robert Stone.

2. The government agreed to drop the conspiracy charge against Rodriguez if she would plead guilty to the telephone charge and would agree to cooperate with the government's prosecution of other persons involved in the conspiracy.

prospective buyer. The defense suggested that Rodriguez' guilty plea was consistent with there being no conspiracy to distribute cocaine: she had pled guilty to the telephone charge but not to the conspiracy charge. It stated that Rodriguez' testimony to the effect that the conspirators' purpose was to distribute cocaine showed simply that the government "proved that they can buy the testimony of a girl who lived with a drug dealer . . . ." 2d Supp. Record at 14.

In response to this attack, the prosecutor stated to the jury in rebuttal: "I ask you to consider one simple question in analyzing the credibility of Ava Lessnee Rodriguez, if there was no agreement to deliver cocaine, why did she plead guilty to anything? She couldn't be guilty to a telephone charge in furtherance of the conspiracy if there was none—" *Id.* at 20–21. At this point, the defense objected and moved for a mistrial. The court denied the motion and instructed the jury as follows: "[I]f any counsel misstate evidence, it is up to you to remember what the evidence was. The arguments made by counsel . . . are designed to help you understand the evidence, and reach a conclusion, but they, in and of themselves, are not evidence, and you should ·receive them in that light." *Id.* at 21.[3]

Despite this cautionary instruction, Marquardt argues that the prosecutor impermissibly requested the jury to infer his guilt from the guilty plea of Rodriguez. Viewed in light of his closing argument, it is apparent that the prosecutor was attempting merely to rebut attacks on Rodriguez' testimony. Also, he was responding to the defense's suggestion that Rodriguez refused to plead guilty to the conspiracy charge because there was no conspiracy to sell cocaine. The logical point for the government to bring out was that she did plead guilty to a charge of using a telephone in the commission of a drug-related felony,

and why would she even do that if there was no conspiracy to sell cocaine. The defense opened the door wide to this argument, and, indeed, compelled the prosecutor to make it. Therefore, Marquardt's second claim is without merit.

▮ Marquardt's third contention is that the trial court erred in admitting evidence of "other crimes" he allegedly committed. Specifically, Ava Lessnee Rodriguez testified that at one time she had seen Marquardt in the possession of cocaine and that at one time he had discussed with her his purchase of over a pound of cocaine. Marquardt argues that this testimony was inadmissible because it had only slight probative value and a great prejudicial effect on his case. The government counters that the testimony was admissible to prove Marquardt's intent to distribute cocaine under Fed.R.Evid. 404(b), and that the trial court was well within its discretion in determining that the prejudicial effect of the evidence did not substantially outweigh its probative value. We agree with the government's argument and therefore reject Marquardt's claim.

The test for determining the admissibility of other-crimes evidence was set forth in the en banc decision of *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979): "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of ·rule 403." *Id.* at 911 (footnote omitted). In this case, the other-crimes evidence was admitted to prove Marquardt's intent to distribute cocaine. The defense had put such intent in issue by suggesting during its cross-examination of the government witness who had posed as the buyer in this

---

**3.** Later, during its final instructions to the jury, the court also stated: "[T]he fact that an accomplice has entered a plea of guilty to the offense charged is not evidence, in and of itself, of the guilt of any other person." Record, vol. I, at 80.

scheme, Special Agent Everett Elledge of the Drug Enforcement Administration, that Marquardt's intent was not to distribute cocaine, but instead to "rip-off" Elledge by taking his money without giving him any cocaine. The testimony of Rodriguez that she had seen Marquardt in possession of cocaine and that he had discussed with her his purchase of a large quantity of cocaine is relevant to his intent to distribute cocaine in this case. Such testimony "tend[s] to make the existence of [Marquardt's intent] more probable ... than it would be without the [testimony]." Fed.R.Evid. 401. Thus, the first prong of the *Beechum* test is satisfied.

Marquardt apparently concedes that the testimony was relevant by acknowledging its slight probative value, but argues that the prejudicial effect of such evidence substantially outweighed its probative value, and, therefore, the second part of the *Beechum* test was not satisfied. We note that this matter is "within the sound discretion of the trial judge." *Beechum,* 582 F.2d at 915. It is apparent that the trial court was well within its discretion in concluding that the probity of this testimony was not substantially outweighed by its prejudicial effect.[4] Thus, Marquardt's third contention fails.

■ The final claim Marquardt presents is that the trial court erred in refusing to hold a pretrial hearing pursuant to *United States v. James,* 590 F.2d 575 (5th Cir.), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), for the purpose of determining the admissibility of out-of-court statements of coconspirators. The government presented only two witnesses who might have related such statements. Thus, the trial court was well within its discretion in refusing to hold a *James* hearing, which would have been duplicative of the trial itself and would have "wasted the judicial resources *James* was designed to conserve." *United States v. Lippner,* 676 F.2d 456, 464 (11th Cir.1982).

■ Moreover, the *James* hearing was designed as a prophylactic measure so that the jury would not hear inadmissible and possibly prejudicial evidence. Because such a hearing is not an absolute requirement in this circuit, the bare allegation that a *James* hearing was not held is meaningless without some showing that the jury heard inadmissible and prejudicial evidence. Nothing in the *James* case suggests that the trial court's failure to hold a *James* hearing constitutes reversible error; the reversible error must occur at trial. Furthermore, the *James* decision does not relieve trial counsel of the obligation to make timely objection to hearsay statements of coconspirators, or to ask the court for appropriate relief when the jury has heard inadmissible hearsay, such as striking testimony, a cautionary instruction, or a mistrial. Therefore, Marquardt's claim, as appropriately framed, is not that the court erred in denying a *James* hearing, but that it should have stricken improper testimony, with a cautionary instruction, or declared a mistrial. Thus, the proper inquiry focuses on the trial itself,

---

4. Marquardt contends on appeal that the district court failed to ascertain the time lapsed between the other crimes and the crimes for which Marquardt was indicted. He argues that the evidence of other crimes thus had little probity. The prosecutor began his examination of Rodriguez, however, by establishing that she lived with Steve Cavano, an unnamed coconspirator, during the period from May to September 1979. The overt acts alleged in the indictment concerning Marquardt occurred on October 18 and 19, 1979. Thus, the judge and the jury could reasonably infer that the "other crimes" in which Marquardt allegedly engaged occurred within six months of the acts alleged in the indictment. In fact, nothing in the record suggests that any other time period would have been appropriate. For example, Marquardt never suggested during cross-examination of Rodriguez that Rodriguez had ever met Marquardt before May 1979. Therefore, the evidence of other crimes appears highly probative of Marquardt's intent to distribute cocaine. Moreover, during a sidebar conference at trial, in response to the prosecutor's assertion that the time period could not have been more than five months, the defense stated, "I don't contest the remote issue." Record, vol. II, at 143. Therefore, Marquardt has no business raising this issue on appeal.

and not on the absence of a merely prophylactic measure.

Consistent with this analysis, Marquardt alleges that he was prejudiced by certain out-of-court statements which, although held inadmissible, were nevertheless heard by the jury. Specifically, Agent Elledge testified that Rodriguez told him the price of the cocaine would be $54,000. At this point, the defense objected on the ground that the government was using out-of-court statements of an alleged coconspirator, Rodriguez, to implicate Marquardt, without having established the existence of a conspiracy.[5] The defense did not, however, move to strike the testimony, ask for a cautionary instruction, or move for a mistrial. The court merely "sustained" the objection; the jury heard the testimony but was not told to disregard it.

At the outset, we make the following observations about the court's ruling on the objection. At that point in the trial, Elledge had already testified without objection that he had spoken with Rodriguez about purchasing cocaine, that he had met with Marquardt to discuss such a purchase, and that Rodriguez had told him that her source was Marquardt. We note, therefore, that the trial court could have properly overruled the objection because the proof had already established the existence of the conspiracy.[6] The court also could have admitted the testimony with a cautionary instruction, if requested, because it tended to prove facts other than those contained in the statement. It tended to establish the identity of coconspirators, the existence of a conspiracy, the purpose of the conspiracy, and Rodriguez' knowledge of the criminal enterprise and her intent to engage in it. In sum, the trial court erred in favor of Marquardt by sustaining his objection. The court's ruling plainly is no ground for reversal.[7]

We also note that Marquardt never moved to strike Elledge's statement and never moved for a mistrial. The trial court thus did all Marquardt asked it to do by sustaining the objection. Marquardt now in effect asks this court to determine that the trial court should have granted a mistrial because of this allegedly inadmissible and prejudicial testimony, even though no such motion was presented to it. As stated, *James* does not relieve counsel of the responsibility of making such a motion. Marquardt's claim fails on this ground alone.

We find no error, much less reversible error, in this record. Accordingly, the judgment of the district court is

AFFIRMED.

---

5. We give Marquardt the benefit of a hearsay objection, but note that not all out-of-court statements are hearsay.

6. If the court was not yet satisfied about the evidence establishing the conspiracy, it could have overruled the hearsay objection subject to the government introducing further evidence of the conspiracy.

7. Also, we dispose of Marquardt's subsidiary contention that there was no evidence of an agreement between Rodriguez and himself and, therefore, the conspiracy was never established. Even assuming that Marquardt had made an argument to this effect before the trial court, which argument we cannot find in the record, our review of the record convinces us that there was more than sufficient evidence for the jury to infer that Rodriguez and Marquardt were members of the same conspiracy. For example, Rodriguez testified that she was the middle-person between Elledge and Marquardt and that she arranged a meeting between them so they could attempt to agree on the terms of the sale of cocaine. Record, vol. II, at 107. Frankly, it borders on the frivolous for Marquardt to suggest that there was insufficient evidence from which the jury could infer that Rodriguez and he were members of the same conspiracy.