UNITED STATES of America,
Plaintiff–Appellee,

v.

Billy Eugene GOSSETT, Jr.,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

William RECTOR, Defendant–Appellant.

Nos. 88–3072, 88–3081.

United States Court of Appeals,
Eleventh Circuit.

July 19, 1989.

---

902

F. Wesley Blankner, Jr., Katz, Jaeger & Blankner, Orlando, Fla., for Billy Eugene Gossett, Jr.

Peter Warren Kenny, Orlando, Fla., for William Rector.

H. Manuel Hernandez, Joseph D. Magri, Asst. U.S. Attys., Orlando, Fla., for the U.S.

Before POWELL *, Associate Justice (Retired), United States Supreme Court,

* Honorable Lewis F. Powell, Jr., Associate Justice of the United States Supreme Court, Retired,   sitting by designation.

RONEY, Chief Judge, and HILL, Circuit Judge.

PER CURIAM:

In this highly unusual case involving mutiny and murder on the high seas, defendants William Rector and Billy Eugene Gossett appeal their conviction for the murder of a ship's Captain, the attempted murder of his First Mate and mutiny. They assert that the district court failed to provide adequate funds for an investigation, to sever and to continue the trial, and that the district court made certain trial errors including refusing to permit a proffered defense witness to testify, and improperly instructing the jury. We affirm.

In July 1987, a commercial shrimping vessel, the "LESLIE RAE," left port in Tampa, Florida on a commercial shrimping expedition in the Atlantic Ocean, north of the Florida Keys. The crew members were Captain Phillip Roush, First Mate Willie Charpentier, and defendants William Gossett and William Rector. Maria Barnes was hired to work in the kitchen. Roush had been Captain of the ship for about one and a half years prior to his death, and Charpentier had been First Mate for almost as long.

The mutiny and attack occurred on July 29, approximately two days out of port while the LESLIE RAE was anchored more than 24 miles off the coast of Cape Canaveral in 150 feet of water. While the Captain and the First Mate were mending shrimp nets, Gossett and Rector came up behind the Captain and the First Mate and simultaneously attacked them. Gossett hit the Captain over the head with a ballpeen hammer, while at the same time Rector hit the First Mate over the head with a steel prybar. To escape the attack, the First Mate jumped overboard. Gossett and Rector dropped the Captain's body into the ocean. The First Mate testified that he then heard three successive shots from his .22 caliber rifle. After swimming for

twelve hours in shark-infested water, the First Mate was rescued by the Coast Guard, who then boarded the LESLIE RAE and arrested the defendants.

A jury found both Rector and Gossett guilty of (1) conspiracy to commit mutiny;[1] (2) aiding and abetting each other in mutiny and revolt on board a United States registered vessel;[2] (3) aiding and abetting each other in the assault with intent to murder the First Mate;[3] (4) aiding and abetting each other in the first-degree murder of the Captain;[4] and (5) felony murder.[5] Rector and Gossett were each sentenced to two concurrent life sentences for the first-degree murder and felony murder, and an additional 20 years imprisonment for the conspiracy, mutiny, and assault with intent to commit murder.

## A. FUNDS FOR INVESTIGATOR

Rector argues that he was denied a fair trial because of the district court's failure to provide adequate funds for his investigator. The district court supplied him with $1,000, the maximum amount allowable under 18 U.S.C.A. § 3006A(e), but Rector contends that he needed additional funds to pay an investigator to develop more exculpatory evidence and to track down transient witnesses to testify concerning the First Mate's credibility.

As a threshold consideration, the Government contends that this Court lacks jurisdiction to review this issue. The appealability of an award for investigative services has not been decided by this Court. The Ninth Circuit has held that the Court of Appeals has jurisdiction to review a challenge to a denial by the district court of defendant's request for additional investigative funds on an appeal from a final conviction. *United States v. Fields*, 722 F.2d 549 (9th Cir.1983), *cert. denied*, 466 U.S. 931, 104 S.Ct. 1718, 80 L.Ed.2d 189 (1984). The Tenth Circuit holds to the contrary. *United States v. Crim*, 527 F.2d

---

1. 18 U.S.C.A. § 371.

2. 18 U.S.C.A. § 2193 and 18 U.S.C.A. § 2.

3. 18 U.S.C.A. § 113(a) and 18 U.S.C.A. § 2.

4. 18 U.S.C.A. § 1111 and 18 U.S.C.A. § 2.

5. 18 U.S.C.A. § 1111 and 18 U.S.C.A. § 2.

289, 296 (10th Cir.1975), *cert. denied*, 425 U.S. 905, 96 S.Ct. 1497, 47 L.Ed.2d 755 (1976). We agree with the Ninth Circuit that there is jurisdiction to review this issue. A review on the merits, however, discloses that Rector failed to establish a need for additional funds, so that the district court did not abuse its discretion in refusing Rector's request for additional funds.

## B. SEVERANCE

■ The district court acted within its broad discretion in denying defendants' request for severance under Fed.R.Crim.P. 14.[6] Generally, coconspirators should be tried jointly. *United States v. Caporale*, 806 F.2d 1487 (11th Cir.1986), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 763 (1987); *United States v. Berkowitz*, 662 F.2d 1127 (5th Cir. Unit B Dec.1981). Defendants have failed to demonstrate specific and compelling prejudice required to warrant severance. *Caporale*, 806 F.2d at 1509; *United States v. Rivera*, 775 F.2d 1559, 1564 (11th Cir.1985), *cert. denied*, 475 U.S. 1051, 106 S.Ct. 1275, 89 L.Ed.2d 582 (1986); *Berkowitz*, 662 F.2d at 1132.

■ The major argument for severance made by the defendants in their respective pretrial motions was the anticipated testimony of possible Government witnesses concerning incriminating out-of-court statements made by Rector and Gossett to fellow inmates while incarcerated, and the resulting confrontation problems under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), if either defendant decided not to testify. Since the district court ruled that no one from the jail would be allowed to testify about statements Rector and Gossett allegedly made about the case, this ground for severance never materialized. *See United States v. Weinstein*, 762 F.2d 1522, 1540 (11th Cir. 1985) (denial of severance upheld when district court properly excluded portions of testimony of prosecution's witnesses, and limited cross-examination of the witness by

co-defendant to avoid possible prejudice), *cert. denied*, 475 U.S. 1110, 106 S.Ct. 1519, 89 L.Ed.2d 917 (1986); *United States v. Caldwell*, 543 F.2d 1333, 1357–58 (D.C.Cir. 1974) (denial of severance upheld when district court correctly excluded anticipated prejudicial testimony of co-defendant's expert witness), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976). The correctness of excluding that testimony is discussed hereafter.

■ Defendants also stated that their defenses would be antagonistic and mutually exclusive. Both motions were vague and conclusory, presenting no information upon which the court could determine that the defenses were irreconcilable. When a defendant fails to provide the court with any basis to grant his motion for severance, such as the nature of his defense and in what respect, if any, his defense is irreconcilable with that of his co-defendant, his motion should be denied. *See United States v. Spitler*, 800 F.2d 1267 (4th Cir. 1986).

■ The trial court, however, has a continuing duty to sever when prejudice appears in the trial, Fed.R.Crim.P. 14; *Schaffer v. United States*, 362 U.S. 511, 514, 80 S.Ct. 945, 947, 4 L.Ed.2d 921 (1960); *Berkowitz*, 662 F.2d at 1132.

In this case, the jury was not forced to choose between Gossett's or Rector's testimony as to the core of each defense as argued by defendants. Gossett testified that neither he nor Rector intended to kill the Captain or the First Mate. Gossett said he agreed with Rector to take over the ship because he was tired of the abuse and was fearful for his safety. Gossett admitted striking the Captain twice in the head with a hammer, but said he did not use his full force, seeking only to knock him out. Gossett said it was Rector who then shot the Captain with the .22 caliber rifle.

Rector testified that he was surprised when Gossett attacked the Captain and only because he was afraid Gossett would

6. According to Rule 14, "[i]f it appears that a defendant ... is prejudiced by a joinder of ... defendants ... for trial together, the court may grant a severance of defendants or provide whatever other relief justice requires." Fed.R. Crim.P. 14.

kill him, did Rector attack the First Mate. He testified that Gossett shot the Captain and that all of Rector's actions were compelled by his fear of Gossett. The fact that their testimony conflicts on who shot the Captain is not significant to the core defense of each concerning lack of intent. *See Berkowitz*, 662 F.2d at 1132. Either could have shot the captain and both be guilty of the crimes for which they were convicted.

Concerning the conspiracy and mutiny charges, Gossett admits that he conspired with Rector to take over the ship while Rector, on the other hand, denies any involvement in the plan to take over the ship and asserts that he was coerced to act by Gossett. Rector admits, however, to talking with Gossett about taking over the ship, but says they never agreed to it. Thus, the jury could have believed Gossett thought there was a conspiracy by misinterpreting Rector's words and actions and still believe Rector's testimony that there was no conspiracy or joint mutiny. Neither defendant was entitled to a severance from the trial of the other.

## C. CONTINUANCE

Gossett and Rector alleged that the district court should have granted their motions for a 30–day continuance, because of the return of a superceding indictment. The district court's ruling is reviewed for abuse of discretion. *United States v. Schardar*, 850 F.2d 1457, 1459 (11th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 326, 102 L.Ed.2d 343 (1988); *United States v. Marquardt*, 695 F.2d 1300, 1302 (11th Cir.), *cert. denied*, 460 U.S. 1093, 103 S.Ct. 1793, 76 L.Ed.2d 360 (1983); *United States v. Uptain*, 531 F.2d 1281, 1285 (5th Cir.1976).

The original six-count indictment was returned on August 28, 1987, charging defendants with: conspiracy to commit mutiny; aiding and abetting each other in mutiny and in the assault with intent to murder First Mate Willie Charpentier and in the premeditated first-degree murder of Captain Phillip Roush.

Both defendants were arraigned on September 10, 1987, and the trial was set for November 9, 1987. On October 29, 1987, the grand jury returned a superceding indictment. The significant changes in the superceding indictment were as follows: two of the original charges—assault with intent to murder Captain Roush and assault with intent to commit a felony—were dropped; some words were added to the murder charges, *i.e.*, the words "deadly weapon" were added to describe the ball-peen hammer, and the words "thereafter throwing his body into the Atlantic Ocean and shooting him" were added to the description of the acts that caused the Captain's death; and a charge of felony murder was added.

The trial court, upon joint motion of both defendants and the Government, granted a continuance until November 23, 1987, 23 days after Rector and Gossett were arraigned on the superceding indictment.

■ Both defendants assert a right to a 30–day continuance, relying on 18 U.S.C.A. § 3161(c)(2), which states:

Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se. . . .

18 U.S.C.A. § 3161(c)(2).

■ Section 3161(c)(2) does not create a *per se* right to an additional 30 days of trial preparation when a superseding indictment is returned. *United States v. Rojas-Contreras*, 474 U.S. 231, 106 S.Ct. 555, 88 L.Ed.2d 537 (1985). The trial court, exercising its broad discretion, may grant additional periods for trial preparation when a superseding indictment is returned, if such an extension is necessary due to substantial changes in the indictment. *See United States v. Hawkins*, 765 F.2d 1482, 1486–87 (11th Cir.1985) (18 U.S.C.A. § 3161(c)(2) does not automatically entitle defendant to additional 30 days preparation after filing of superseding indictment, but neither does it preclude such additional time; statute should be applied flexibly according to circumstances surrounding each superseding

indictment), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 886, 88 L.Ed.2d 921 (1986).

■ Since the court did give defendants a 23–day continuance, the claim comes down to the assertion that the court abused its discretion in failing to grant another seven days. The underlying basis for this claim is that, due to the changes in the superceding indictment, defendants had inadequate time to prepare for trial. Gossett argues he was additionally prejudiced because his original trial counsel, a federal public defender, withdrew on October 28, 1987 and his trial counsel was not appointed until October 29, 1987, the day the grand jury returned the superceding indictment; and because he did not have access to an investigator provided by the Federal Public Defender's office for a few days prior to trial. Defendants must show an abuse of discretion and specific, substantial prejudice in order to obtain relief when a continuance is sought to investigate the facts of their case and the background of a witness. *United States v. Astling,* 733 F.2d 1446, 1452–53 (11th Cir.1984). Defendants in this case have suggested nothing to this Court, nor can we find anything in the record that would indicate the possibility of a different outcome if the defendants had been given an additional seven days to prepare for trial. Defendants have failed to show the specific and substantial prejudice required to obtain relief. There is no basis to find an abuse of discretion in the denial of any further continuance.

## D. TESTIMONY OF STEPHEN CONLEY BROWN

Gossett asserts the district court erred in excluding the testimony of Stephen Conley Brown, who purportedly would testify about statements made by Rector at the jail. He argues that such testimony would have inculpated Rector and to some extent exculpated Gossett. Brown would have testified that he was Rector's cell mate and that Rector admitted to him that after Rector hit the First Mate, he went and got a pistol from the crew's quarters, and shot the Captain several times. Brown would also testify that Gossett stopped Rector from shooting the First Mate, and that both Gossett and Rector then threw the Captain and the First Mate overboard. Brown offered several variations on his story, including one in which Gossett attempted to stop Rector from shooting the Captain and another in which the First Mate was already gone when Rector returned to shoot the Captain.

Gossett contends that this testimony was admissible as a nonhearsay admission against a party opponent under Fed.R. Evid. 801(d)(2); as a statement against penal interest, a hearsay exception under Fed.R.Evid. 804(b)(3); or for impeachment purposes under Fed.R.Evid. 607.

■ The district court properly excluded this evidence. The testimony was not admissible under Rule 801(d)(2) because the admission sought to be introduced was made by a co-defendant who is not a party opponent. The Government is the party opponent of both defendants.

■ The testimony was not admissible under Fed.R.Evid. 804(b)(3).[7] The Rule requires that (1) the declarant be unavailable; (2) the statement be against the declarant's penal interest; and (3) there be corroborating circumstances that clearly indicate the trustworthiness of the statement. Fed.R. Evid. 804(b)(3); *United States v. Carlin,* 698 F.2d 1133, 1137 (11th Cir.), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed. 2d 1317 (1983); *United States v. Bagley,* 537 F.2d 162, 165 (5th Cir.1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 816, 50 L.Ed. 2d 794 (1977).

Rector was not available as a witness because he was on trial and thus was pro-

---

7. The rule provides that if the declarant is unavailable, the hearsay rule does not require the exclusion of a statement against interest:

  (3) Statement against interest. A statement which was at the time of its making ... so far tended to subject the declarant to ... criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

tected against testifying. *See United States v. Harrell*, 788 F.2d 1524, 1527 (11th Cir.1986). Assuming for the sake of argument, that the statements were against Rector's penal interest, they would still be inadmissible if corroborating circumstances did not indicate the trustworthiness of the testimony. Because the trial court made no explicit finding as to whether such circumstances exist, "we must determine whether any reasonable view of the evidence supports its ruling." *Bagley*, 537 F.2d at 167.

The essence of Brown's testimony was that Rector shot the Captain on the deck with a 9 mm pistol. The evidence presented at trial, however, indicated that there was no ammunition for the pistol on the boat, and no holes were found in the deck. The testimony directly contradicts not only the First Mate's testimony, but Gossett's rendition of events, including how the mutiny began and which weapon was used to shoot the Captain. The trial judge was also entitled to consider the fact that Brown was a prison inmate in determining whether his testimony would be trustworthy. *Bagley*, 537 F.2d at 168. Under these circumstances, the trial judge could reasonably have concluded that the trustworthiness of the statement was not clearly indicated, and the evidence could be properly excluded on this basis.

At the close of Rector's testimony, Gossett renewed his request for the court to allow Brown to testify—this time "in an attempt to impeach ... Mr. Rector," who according to Gossett "made extremely false statements [concerning his involvement]." The court responded by stating that it had already ruled on this matter.

The law in this Circuit is settled that impeachment by prior inconsistent statement may not be permitted where it is used as a stratagem to get before the jury otherwise inadmissible evidence. *Balogh's of Coral Gables, Inc. v. Getz*, 798 F.2d 1356, 1357 n. 2 (11th Cir.1986) (in banc); *Whitehurst v. Wright*, 592 F.2d 834, 839 (5th Cir.1979). While in each of these cases, the impeaching party sought to impeach his or her own witness, the same principle is applicable in this situation where it is clear that Gossett sought to introduce the impeachment as substantive evidence.

## E. INSUFFICIENT EVIDENCE; ERRONEOUS JURY INSTRUCTIONS

Gossett argues that the judge erred in instructing the jury regarding robbery, the felony upon which the felony murder charge was based.[8] The court charged the jury that "the government is not required to prove that the defendants intended to permanently convert the property taken to their own use." Gossett contends that the charge erroneously led the jury to believe they did not have to find the element of taking with the intent to permanently deprive the owner of property, an element in the lesser included offense of larceny and thus an element of robbery. *United States v. Hinton*, 703 F.2d 672 (2d Cir.), *cert. denied*, 462 U.S. 1121, 103 S.Ct. 3091, 77 L.Ed.2d 1351 (1983); *United States v. Riggs*, 537 F.2d 1219 (4th Cir. 1976). The district court correctly instructed the jury that conversion was not an element of proof on a robbery charge. As for Gossett's contention that the jury was not instructed to consider whether he intended to permanently deprive the Captain of his property, we read the maritime rob-

---

**8.** Instructing the jury concerning robbery, the court stated:

The final element the Government must prove beyond a reasonable doubt is that the defendants killed Captain Phillip Roush in the perpetration or attempted perpetration of a robbery. Robbery means the unlawful taking or obtaining or attempting to take or obtain the personal property or property in the custody and possession of another against his will by means of actual or threatened force or violence.

To prove robbery or attempted robbery the Government must prove beyond a reasonable doubt, first, that the defendants took or attempted to take from the presence of the person described in the indictment personal property or property that was in the person's custody or possession. Second, that the defendants did this by means of force or violence or by means of intimidation. And third, that the defendants did so willfully.

Jury Charge, R. 14–954–55.

bery statute, 18 U.S.C.A. § 2111, upon which the jury instructions were patterned, to include the element of common law larceny. *See United States v. Riggs,* 537 F.2d 1219 (4th Cir.1976) (court read element of common law larceny into bank robbery statute, 18 U.S.C.A. §§ 2113(b) and (f)). Considering the trial court's instructions as a whole, we determine that the jury "was properly guided in its deliberations." *Houston v. Herring,* 562 F.2d 347, 348–49 (5th Cir.1977).

To sustain the conviction in this case, we must determine whether there was sufficient evidence from which the trier of fact could have found beyond a reasonable doubt that Gossett had the requisite intent. Viewed in the light most favorable to the Government, there is ample record evidence indicating that Gossett intended to deprive the Captain permanently of his property. There was evidence that the ship itself was worth more than $250,000 and that $3000 dollars worth of shrimp was on it after the mutiny. The Captain's wallet, which was on the boat, had $290 in it. Both Rector and Gossett had talked to Charpentier about killing the Captain, stealing the boat, and going to Rio. After the mutiny and murder, Rector and Gossett tried to start and run the ship, moving it a short distance, and they both admitted to Maria Barnes that they had "hijacked the boat." Based on this evidence, a reasonable jury could have inferred that the defendants intended to commit robbery when they murdered Captain Roush. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Ospina,* 823 F.2d 429, 433 (11th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1232, 99 L.Ed.2d 432 (1988).

Gossett's claim that the admission of the Captain's wallet and photographs was prejudicial, and Rector's claims that the district court failed to conduct sufficient *voir dire* on the effect of pre-trial publicity on the potential jurors, and that the court erred in allowing the jury to convict Rector of both premeditated first-degree murder and felony murder and in imposing concurrent sentences on these charges are meritless.

AFFIRMED.