[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 9, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14592

_____

D. C. Docket No. 07-20355-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GISELA VALLADARES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 9, 2008)**

Before TJOFLAT and CARNES, Circuit Judges, and BOWEN,[*] District Judge.

---

[*]Honorable Dudley H. Bowen, Jr., United States District Judge for the Southern District
of Georgia, sitting by designation.

PER CURIAM:

Gisela Valladares appeals her convictions and sentences for: (1) a multiple object conspiracy (a) to defraud the United States by impairing the functioning and administration of the Medicare Program in violation of 18 U.S.C. § 371; (b) to knowingly cause the submission of false claims to the Department of Health and Human Services in violation of 18 U.S.C. § 287; and (c) to knowingly solicit and receive cash kickbacks involving a federal health care program in violation of 42 U.S.C. § 1320a-7b(b)(1); (2) conspiracy to defraud the Medicare Program in violation of 18 U.S.C. § 1349; and (3) three counts of soliciting and receiving cash kickbacks involving the Medicare Program in violation of 42 U.S.C. § 1320a-7b(b)(1).

This case involves Valladares' participation in a scheme to defraud the Medicare program. Acting on the instructions of two pharmacies, Valladares would pay Medicare beneficiaries to go to doctors, whom she also bribed, in order to obtain prescriptions for medically unnecessary aerosol medication. In exchange for kickbacks, Valladares would then give these prescriptions to the pharmacies, which would use them to submit fraudulent reimbursement claims to Medicare. Although it was not charged in the indictment, the government also presented evidence at trial indicating that Valladares was independently submitting similar,

2

fraudulent Medicare claims on behalf of her company, PRN Home Health Care, which provided aerosol-related medical equipment to Medicare beneficiaries.

After a three-day trial, the jury returned its verdict convicting Valladares on all counts of the indictment. The court then held a hearing on the forfeiture issues involved in the case, after which it entered a forfeiture order in the amount of $245,351. At her sentence hearing, the district court sentenced Valladares to 120 months imprisonment and ordered restitution in the amount of $1,726,957.18. After filing a timely appeal, Valladares contends that the district court erred by: (1) denying her motions to continue the trial; (2) miscalculating her applicable guidelines range by using the commercial bribery guideline in United States Sentencing Guidelines § 2B4.1 (Nov. 2006) to calculate her base offense level, applying an 18-level enhancement under U.S.S.G. § 2B4.1(b)(1)(B), and applying a four-level aggravating-role enhancement under U.S.S.G. § 3B1.1(a); (3) improperly calculating the amount of restitution; and (4) improperly ordering forfeiture.

## I.

We first address Valladares' contention that the district court abused its discretion by denying her unopposed motions to continue the trial on the ground that she did not have enough time to analyze the voluminous records related to the

facts of the case. She was put to trial fifty-four days after the indictment was returned, forty-seven days after she was arrested, and thirty-five days after she was arraigned. That, she argues, was too quickly to permit her to adequately prepare for trial, and the problem was aggravated by the government's delay in making certain information available to her. According to Valladares, this Court has found an abuse of discretion when the district court denied defense counsel's motions for a continuance under similar circumstances.

We review a district court's denial of a motion for continuance only for an abuse of discretion. United States v. Baker, 432 F.3d 1189, 1248 (11th Cir. 2005). "The Sixth and Fourteenth Amendments to the U.S. Constitution guarantee that any person brought to trial in any state or federal court must be afforded the right to assistance of counsel before he or she can be validly convicted and punished by imprisonment." United States v. Verderame, 51 F.3d 249, 251 (11th Cir. 1995).

> Under certain circumstances, denial of a motion for continuance of trial may vitiate the effect of this fundamental right. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

Id. (quotation omitted). "To prevail on such a claim, a defendant must show that the denial of the motion for continuance was an abuse of discretion which resulted in specific substantial prejudice." Id. "To make such a showing, [the defendant]

4

must identify relevant, non-cumulative evidence that would have been presented if [her] request for a continuance had been granted." United States v. Saget, 991 F.2d 702, 708 (11th Cir. 1993).

In United States v. Gibbs, 594 F.2d 125 (5th Cir. 1979),[1] a bankruptcy fraud case, we concluded that the district court did not abuse its discretion by denying the defendant's motion for a continuance. Id. at 127. The defendant, as the president of a hotel, had presented to the hotel fictitious invoices for bedding and linens after the hotel had filed for bankruptcy. Id. at 126. He then had the hotel issue checks for the invoices, which he deposited into a bank account for which he was the sole signatory. Id. The defendant was arraigned on June 29, 1978, and his trial was scheduled to begin on July 17. Id. On June 29, the defendant filed a motion for a continuance, which the district court denied, and the trial began on July 26. Id.

After a jury trial the defendant in Gibbs was convicted and he appealed, arguing that the district court erred by denying his motion for a continuance because "more time was necessary to review the Hotel's records to assemble receipts and invoices substantiating his claim that [the amount of one of the

_____

[1] In our en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

checks] represented reimbursement for personal expenses on behalf of the Hotel."

Id. We concluded that the district court did not abuse its discretion. Id. at 127.

We found that the defendant had ample time to prepare his defense, and he had

"point[ed] to no critical documents that might have been uncovered with additional

time and whose absence prejudiced or impaired his defense." Id.

In United States v. Gossett, 877 F.2d 901 (11th Cir. 1989), the defendants

were convicted of mutiny and murder arising out of events that occurred on a ship

in the Atlantic Ocean. Id. at 903. Their trial was originally set for November 9,

1987, but on October 29, the grand jury returned a superseding indictment. Id. at

905. They were arraigned on October 31, and the district court agreed to continue

the trial to November 23, which was only twenty-three days later. Id. After they

were convicted, the defendants appealed, arguing that they were entitled to, at a

minimum, a 30-day continuance after their arraignment on the superseding

indictment. Id. According to the defendants, because of the changes in the

superseding indictment they had inadequate time to prepare for trial. Id. at 906.

We disagreed, concluding:

> Defendants in this case have suggested nothing to this Court, nor can
> we find anything in the record that would indicate the possibility of a
> different outcome if the defendants had been given an additional
> seven days to prepare for trial. Defendants have failed to show the
> specific and substantial prejudice required to obtain relief. There is no

6

basis to find an abuse of discretion in the denial of any further continuance.

Id.

In Saget, a large drug conspiracy case, the defendants argued that the district court had abused its discretion by denying their motions for a continuance on the ground that two weeks before trial, the government had disclosed to them substantial new evidence. Saget, 991 F.2d at 708. Defense counsel argued that two weeks was an "insufficient amount of time to allow him to fully evaluate the voluminous amounts of new evidence and to fully prepare his case for trial." Id. The district court denied the motion for continuance after finding to the contrary that defense counsel had "ample opportunity to review and analyze the discovery material and prepare adequately for the trial." Id. We concluded that the district court had not abused its discretion because "[t]he record contains nothing that would indicate a different result had the motions been granted. In the absence of any proffer of additional evidence that would have been presented by [defense counsel] if granted a continuance, we cannot find any specific or substantial prejudice arising from the district court's denial of his motion for a continuance." Id.

In Verderame, the defendant was indicted for two separate drug conspiracies in Florida, one involving marijuana and one involving cocaine, and the district

7

court set his trial date for thirty-four days after he was arraigned on the charges. Verderame, 51 F.3d at 250. The government did not submit its bill of particulars, which included all of the assets it intended to subject to forfeiture, until one week before the trial, and three days before the trial was set to begin the district court dismissed the charges relating to the cocaine conspiracy. Id. at 250–51. In the thirty-four days between the arraignment and the scheduled trial date, Verderame's counsel made four unopposed motions for continuance. Not only did the government not oppose those motions, it even filed a response supporting a continuance and urging the court to find that the ends of justice required a continuance in order for the defendant to have time to prepare for trial. Id. The district court denied the defendant's motions for a continuance, and the trial proceeded as scheduled. Id. At trial the government argued that Verderame had participated in the marijuana conspiracy primarily by collecting and storing the drug proceeds. Id. at 251. Most of the government's evidence came from the testimony of an Internal Revenue Service agent that, based on his review of Verderame's financial records, Verderame spent considerably more than the amounts he claimed as income on his federal tax returns, which indicated he had been engaging in illicit activities. Id.

After he was convicted of conspiracy to possess with intent to distribute marijuana, Verderame appealed, arguing that the district court committed reversible error by denying his motions for a continuance.  Id. at 250.  We stated that, in order to refute the IRS agent's testimony that Verderame had understated his income, "Verderame needed time to compile evidence demonstrating that he had bought and sold several businesses over the years, some generating cash payments and other proceeds, others requiring him to borrow money from time to time."  Id. at 251–52.  Verderame argued that "the 34 days between arraignment and trial were simply insufficient for his counsel, with the assistance of two lawyers and a paralegal, to gather the requisite financial information, obtain pertinent travel papers, interview witnesses, and review documents the government continued to provide up to the day of trial."  Id. at 252.  We agreed, stating:

> We find that the 34 days failed to provide defense counsel with sufficient time to defend against a case which the government spent years investigating, a case which grew during the 34-day interval to encompass further property subject to forfeiture, a case which abruptly shifted focus away from the cocaine conspiracy a mere four days before trial.  We also find that the 34 days failed to provide the government with sufficient time to supply Verderame with copies of all the documents it had seized and to which he was entitled.

Id.

Although we recognize that Valladares' counsel had only thirty-five days after arraignment to prepare her defense, we nevertheless conclude that the district

9

court did not abuse its discretion by denying her motions for a continuance.  In denying the motions, the district court stated that defense counsel had more than a month to prepare, and that the government had identified all of the documents it intended to use.  Valladares has not pointed to any specific documents or relevant, non-cumulative evidence she would have presented, nor have we found anything in the record that would "indicate a different result had the motions been granted." See Saget, 991 F.2d at 708; Gossett, 877 F.2d at 906.

In her reply brief, Valladares does state that PRN did not file any claims on behalf of approximately twenty percent of the Medicare beneficiaries that the government attributed to her in the pharmacy scheme.  She then argues that the Medicare billing records of the pharmacies "would have assisted the defense to demonstrate a lack of association between many [of those Medicare beneficiaries] and Mrs. Valladares."  She also asserts that the Medicare "Explanation of Benefits" for the PRN claims from 2000 through 2007 "clearly were relevant to the defense." However, in light of the extensive testimony by the pharmacy owners and two Medicare beneficiaries implicating Valladares in the Medicare fraud scheme, it is unlikely that presentation of these records would have changed the outcome of her case.  See Saget, 991 F.2d at 708; Gossett, 877 F.2d at 906.  This is especially true given that, as she admits in her reply brief, only twenty percent of the Medicare

10

beneficiaries attributed to her in the pharmacy scheme did not also have claims filed by PRN.

This situation is distinguishable from Verderame, where the government's case was based primarily on an IRS agent's testimony about the defendant's financial records and defense counsel argued that there were specific financial records that he needed to refute the agent's testimony but did not have time to obtain and review before the trial began. See Verderame, 51 F.3d at 252. Although the opinion in that case did not state whether Verderame presented any specific documents that would have refuted the agent's testimony, under the prior panel precedent rule the panel in Verderame could not have overruled our earlier holdings in Gossett and Saget that, in order to show specific, substantial prejudice, the defendant must present evidence indicating a different outcome had the motion for a continuance been granted. See Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8 (11th Cir. 2001) ("Under the well-established prior panel precedent rule of this Circuit, the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court."). Or, if it did implicitly, we are still bound to follow the holdings of the earlier decisions. See

11

United States v. Ohayon, 483 F.3d 1281, 1289 (11th Cir. 2007); Cohen v. Office

Depot, Inc., 204 F.3d 1069, 1072 (11th Cir. 2000) (en banc).

Federal Rule of Criminal Procedure 33(b)(2) provides that a defendant may file a motion for new trial within seven days after the verdict or finding of guilty. If that was not enough time for Valladares to examine the documents in order to make the required showing of prejudice, or to obtain any new documents she thought would have been helpful in showing prejudice, she could have filed a motion under Federal Rule of Criminal Procedure 45(b)(1) for an extension of time to file a motion for a new trial. See Fed. R. Crim. P. 33 advisory committee's note to 2005 amend. ("[T]here is nothing to prevent the court from granting the defendant a significant extension of time"). Or she could have filed the motion for a new trial and then asked the court to permit her time to submit evidence and argument in support of it. She did not do that.

Because Valladares has not identified any specific documents or other non-cumulative evidence that would indicate a different outcome if her motions had been granted, she has failed to show "specific, substantial prejudice." See Saget, 991 F.2d at 708; Gossett, 877 F.2d at 906. Accordingly, the district court did not abuse its discretion by denying the motions.

**II.**

Valladares next contends that the district court erred by improperly calculating her sentencing guidelines range. After United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), sentencing generally requires two steps: first, the district court must correctly calculate the guidelines range; second, the district court must consider the factors listed in 18 U.S.C. § 3553(a) in arriving at a reasonable sentence. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guideline range." Gall v. United States, 552 U.S. ___, ___, 128 S. Ct. 586, 596 (2007).

**A.**

Valladares argues that the district court erred by using the commercial bribery guideline in U.S.S.G. § 2B4.1 instead of the fraud guideline in U.S.S.G. § 2B1.1 to determine her base offense level because, according to her, the government argued that the ultimate purpose of the conspiracy was to defraud the Medicare program. According to Valladares, § 2B4.1 should only be used when a Medicare kickback scheme does not involve fraud claims and, in this case, the kickbacks were used to accomplish Medicare fraud.

We review de novo the district court's determination of the applicable guideline. United States v. Starks, 157 F.3d 833, 841 (11th Cir. 1998). Appendix A of the guidelines lists both § 2B1.1, which includes "fraud and deceit," and § 2B4.1, which includes "commercial bribery," as applicable guidelines for violations of 42 U.S.C. § 1320a-7b, the violations forming the basis of Valladares' base offense level in this case. U.S.S.G. app. A (2006). The appendix provides that "[i]f more than one guideline section is referenced for the particular statute, use the guideline most appropriate for the offense conduct charged in the count of which the defendant was convicted." Id.

The commentary to § 2B4.1 provides that it "covers commercial bribery offenses and kickbacks that do not involve officials of federal, state, or local government." U.S.S.G. § 2B4.1 cmt. n.1. Similarly, the background comments to § 2B4.1 state that it "applies to violations of various federal bribery statutes that do not involve governmental officials." U.S.S.G. § 2B4.1 cmt. background.

In Starks one of the defendants entered into a contract with a Medicaid-providing hospital to run a chemical dependency unit in exchange for a share of the hospital's profits earned from the program. Starks, 157 F.3d at 835. The defendant unlawfully paid state employees working in a federally funded program to refer patients to the chemical dependency unit, and he was eventually convicted

14

of violating 42 U.S.C. § 1320a-7b and sentenced under the fraud guideline, which at the time was § 2F1.1 but has since been merged with § 2B1.1. Id. at 841. The government appealed, arguing that he should have been sentenced under § 2C1.1, the guideline for bribing public officials, even though that guideline was not listed in the appendix. Id. We agreed, concluding that the fraud guideline was not applicable because the defendant did not steal from the government or file false Medicaid claims, "but rather engaged in a kickback scheme that corrupted [the federally funded program's] referral process." Id. We also noted that "[i]f [the recipients of the kickbacks] were bribed but were not public officials, then § 2B4.1 (commercial bribery) would have applied." Id. at 842 n.14.

In United States v. Poirier, 321 F.3d 1024 (11th Cir. 2003), this Court addressed whether to apply the § 2F1.1 fraud guideline or the § 2B4.1 commercial bribery guideline to the defendant's wire fraud conviction. Id. at 1034. In that case Fulton County had hired one of the defendants to provide fair and disinterested assistance in selecting an underwriter, but the defendant instead sold confidential documents to his codefendant to help the codefendant's firm succeed in the selection process. Id. We concluded that "the defendants' 'conduct more closely resembled a fraud achieved through bribery than a straight fraud,' and for that reason the § 2B4.1 guideline applies." Id. (citation omitted).

15

We conclude that the district court did not err by using § 2B4.1, the commercial bribery guideline, to calculate Valladares' base offense level. The evidence at trial established that Valladares bribed Medicare beneficiaries and doctors in order to obtain the prescriptions that allowed the pharmacies to submit the fraudulent Medicare reimbursement claims. As a result, this case involved "fraud achieved through bribery" of the Medicare recipients rather than "straight fraud," and the district court therefore correctly applied the § 2B4.1 commercial bribery guideline. See id.

B.

Valladares next argues that, even if the district court was correct in applying § 2B4.1, it erred by applying an 18-level enhancement under U.S.S.G. § 2B4.1(b)(1) because, according to her, for purposes of the enhancement the "greater value of the bribe or the improper benefit to be conferred" includes only the amount of money that Medicare paid to the pharmacies, or $245,310. Valladares argues that the district court incorrectly used the total intended loss of more than $3 million and, if it had used the improper benefit conferred on the pharmacies, she would have received only a 12-level enhancement.

We review the district court's determination under § 2B4.1(b)(1) only for clear error. United States v. Liss, 265 F.3d 1220, 1230 (11th Cir. 2001). Section

16

2B4.1 provides that the base offense level is enhanced pursuant to the amount of loss table in § 2B1.1 if "the greater value of the bribe or the improper benefit to be conferred . . . exceeded $5,000." U.S.S.G. § 2B4.1(b)(1)(B). The table in § 2B1.1 provides for an 18-level increase if the value is more than $2.5 million but not more than $7 million. U.S.S.G. § 2B1.1(b)(1). According to the application notes, "[t]he 'value of the improper benefit to be conferred' refers to the value of the action to be taken or effected in return for the bribe." U.S.S.G. § 2B4.1 cmt. n.2. The notes also refer to the commentary in § 2C1.1, which provides that "'the benefit received or to be received' means the net value of such benefit." U.S.S.G. § 2C1.1 cmt. n.3; see also United States v. DeVegter, 439 F.3d 1299, 1303 (11th Cir. 2006) (stating that the improper benefit under § 2B4.1 is the net value conferred).

The parties do not dispute that the value of the improper benefit to be conferred on the pharmacies was between $200,000 and $400,000. Valladares also does not challenge the district court's finding that the amount of loss from the PRN scheme was $2.7 million, so she has abandoned this issue. See United States v. Cunningham, 161 F.3d 1343, 1344 (11th Cir. 1998) (stating that issues not raised on appeal are abandoned). However, Valladares does dispute the government's contentions that the PRN scheme was relevant conduct and that, as a result, the

17

$2.7 million loss from that scheme was properly included for purposes of the enhancement.

As the government contends, it was proper for the district court to consider relevant conduct when calculating this enhancement, see U.S.S.G. § 1B1.3(a)(ii) (stating that specific offense characteristics shall be determined based on relevant conduct). And as will be discussed further below, the district court did not clearly err by finding that the PRN scheme was relevant conduct. Accordingly, we conclude that the district court did not err by applying an 18-level enhancement under § 2B4.1(b)(1).

C.

Valladares also argues that the district court erred by applying a four-level aggravating-role enhancement under U.S.S.G. § 3B1.1(a) based on her role in the PRN scheme because, according to her, that scheme was not a valid basis for the enhancement. Furthermore, Valladares contends that the district court improperly failed to make a specific factual finding on this issue.

"We review for clear error the district court's determination of [the defendant's] role in the scheme and de novo its application of the guidelines to that role." United States v. Njau, 386 F.3d 1039, 1041 (11th Cir. 2004). We review only for clear error the application of the relevant conduct guideline in § 1B1.3 to

the facts of the case.  United States v. White, 335 F.3d 1314, 1319 (11th Cir. 2003).

Under U.S.S.G. § 3B1.1, a defendant's offense level is increased by four levels if she "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  U.S.S.G. §  3B1.1(a).  However, "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive," her offense level is increased by only three levels.  U.S.S.G. § 3B1.1(b).

> In distinguishing a leadership and organizational role from one of mere management or supervision, . . . . [f]actors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4.

Adjustments under chapter three of the guidelines are based on the defendant's relevant conduct, as defined under § 1B1.3.  U.S.S.G. § 1B1.3(a).  For offenses where the commercial bribery guideline applies, relevant conduct includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction."  U.S.S.G. § 1B1.3(a)(2)

19

(cross-referencing U.S.S.G. § 3D1.2(d)). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3, cmt. n.9(A). Accordingly, we consider "whether there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct rather than isolated, unrelated events that happen only to be similar in kind." United States v. Maxwell, 34 F.3d 1006, 1011 (11th Cir. 1994) ((citation omitted). Uncharged conduct may constitute relevant conduct. See, e.g., United States v. Fuentes, 107 F.3d 1515, 1524–26 (11th Cir. 1998) (holding that uncharged conduct very similar to the conduct underlying the defendant's federal conviction was relevant conduct).

With respect to whether the court made a sufficient finding on the role enhancement, although the court adopted the PSR and the portion of the PSR addendum on this issue, the court also explicitly made a finding that the probation officer correctly applied the enhancement based on the facts presented at trial. The district court's adoption of the probation officer's findings indicates that the court applied the enhancement based on Valladares' role in the PRN scheme. Valladares does not dispute that she was the organizer or the leader of this scheme

20

or that it involved five or more participants. Instead, her primary argument is that the PRN scheme was not relevant conduct for the purposes of the aggravating-role enhancement, so her role in that scheme could not be used to justify the four-level enhancement.

We conclude that the district court did not clearly err by finding that the PRN scheme was relevant conduct under § 1B1.3. First, the government presented evidence that the pharmacies and PRN each knowingly defrauded the Medicare program, which means that the victim and the purpose of each scheme were the same. Second, there was testimony at trial that the two schemes involved the same modus operandi of submitting fraudulent claims to Medicare for reimbursement. Third, according to Special Agent Hernandez's testimony, both schemes used many of the same patients to bill Medicare. In fact, Valladares conceded at her sentence hearing that there were forty-three overlapping patients who were billed on behalf of both PRN and the pharmacies. Finally, the government presented testimony at trial that the aerosol medication billed by the pharmacies was commonly ingested through the aerosol durable medical equipment billed by PRN and that Medicare would only reimburse aerosol medication taken through that type of equipment. All of these similarities show that the pharmacy and PRN schemes were part of a common plan or scheme, see U.S.S.G. § 1B1.3, cmt.

n.9(A); Maxwell, 34 F.3d at 1011, and, as a result, the district court's finding that the PRN scheme was relevant conduct was not clearly erroneous, see Fuentes, 107 F.3d at 1524–26.

## III.

Valladares next contends that the district court improperly calculated the restitution award by including all of the money that Medicare paid to PRN from 2000 to May 2007 because that scheme was not charged in the indictment. Valladares argues that restitution may be ordered only for losses attributable to the offense of conviction and that there was no direct or proximate cause between the Medicare payments to PRN and the false claims submitted by the pharmacies. According to her, restitution should not have been awarded in excess of $245,351.21, the amount that Medicare paid to the pharmacies. Valladares also argues that the district court failed to make a sufficient finding on the restitution issue.[2]

"We review de novo the legality of an order of restitution, but review for abuse of discretion the determination of the restitution value of lost or destroyed

---

[2] Valladares also argues for the first time in her reply brief that the district court incorrectly calculated the losses Medicare sustained with respect to the PRN scheme. However, because she failed to raise this issue in her initial brief, we will not address it. See United States v. Magluta, 418 F.3d 1166, 1185 (11th Cir. 2005) ("[A]n appellant may not raise an issue for the first time in a reply brief.").

property. We review for clear error factual findings underlying a restitution order." United States v. Robertson, 493 F.3d 1322, 1330 (11th Cir. 2007) ((citations omitted). "A federal district court has no inherent authority to order restitution, and may do so only as explicitly empowered by statute." United States v. Dickerson, 370 F.3d 1330, 1335 (11th Cir. 2004) ((citation omitted). The Mandatory Victim Restitution Act provides that the district court shall order restitution to the victim of an offense where the defendant is convicted of an offense "in which an identifiable victim or victims has suffered a . . . pecuniary loss." 18 U.S.C. § 3663A(a)(1), (c)(1)(B). The statute defines "victim" as:

> [A] person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2). "The court is required to order restitution 'in the full amount of each victim's losses.'" United States v. Hasson, 333 F.3d 1264, 1276 (11th Cir. 2003) (quoting 18 U.S.C. § 3664(f)(1)(A)). "Disputes over the amount of the restitution are to be resolved by a preponderance of the evidence." Id. (citing 18 U.S.C. § 3664(e)).

In Dickerson, this Court interpreted the statutory definition of "victim" in § 3663A(a)(2) with respect to the crime of wire fraud and held that the district

23

court "must . . . order the defendant to pay restitution to all victims for the losses they suffered from the defendant's conduct in the course of the scheme, even where such losses were caused by conduct outside the statute of limitations." Dickerson, 370 F.3d at 1342. In support of this conclusion, we cited with approval a Ninth Circuit decision holding that "'when the crime of conviction includes a scheme, conspiracy, or pattern of criminal activity as an element of the offense,' the court may order restitution for 'acts of related conduct for which the defendant was not convicted,' at least when such conduct occurred within the statute of limitations." Id. at 1339 (quoting United States v. Lawrence, 189 F.3d 838, 846 (9th Cir. 1999)). We went on in Dickerson to state that "a criminal defendant cannot be compelled to pay restitution for conduct committed outside of the scheme, conspiracy, or pattern of criminal behavior underlying the offense of conviction." Id. at 1341. A district court may not order a defendant to pay restitution for criminal conduct "unrelated to the offense of conviction." Id.

With respect to whether the district court made appropriate findings, we note that Valladares did not object before the district court to the PSR's calculation of the actual losses sustained by Medicare, instead objecting only generally to the inclusion of the losses from the PRN scheme. In addition, the district court affirmatively stated that the probation officer had correctly calculated the amount

24

of restitution, and the court broke down the amount of restitution that was owed individually by Valladares for the PRN scheme and the amount that was owed jointly and severally with the pharmacy owners based on the pharmacy conspiracy. Thus, contrary to Valladares' contention, the district court did make findings on this issue.

We conclude that the court did not err with respect to its restitution award. As we have already noted, the district court's finding that the PRN scheme was relevant conduct was not clearly erroneous. Because the PRN scheme could be considered relevant conduct, when calculating restitution the district court was permitted to consider the losses Medicare incurred from that scheme. See Dickerson, 370 F.3d at 1339, 1341.

**IV.**

Valladares finally contends that the district court lacked statutory authority under 18 U.S.C. § 982(a)(7) to impose forfeiture for her conspiracy convictions. She also argues that the district court's forfeiture order violated the Ex Post Facto Clause by including Medicare payments made before July 2002, the effective date of the statute in count two of the indictment, 18 U.S.C. § 1349.

"We review de novo the legality of an order of forfeiture." United States v. Foley, 508 F.3d 627, 632 (11th Cir. 2007). "We review de novo a defendant's

claim that [her] sentence was imposed in violation of the Ex Post Facto Clause."

United States v. Abraham, 386 F.3d 1033, 1037 (11th Cir. 2004). Under

§ 982(a)(7), "[t]he court, in imposing sentence on a person convicted of a Federal

health care offense, shall order the person to forfeit property, real or personal, that

constitutes or is derived, directly or indirectly, from gross proceeds traceable to the

commission of the offense."  18 U.S.C. § 982(a)(7).

> As used in this title, the term "Federal health care offense" means a
> violation of, or a criminal conspiracy to violate –
>
> > (1) section 669, 1035, 1347, or 1518 of this title;
> >
> > (2) section 287, 371, 664, 666, 1001, 1027, 1341, 1343, or 1954
> > of this title, if the violation or conspiracy relates to a health care
> > benefit program.

18 U.S.C. § 24(a).

"The ex post facto clause prohibits the enactment of laws which increase

punishment for a crime after its commission."  United States v. Terzado-Madruga,

897 F.2d 1099, 1124 (11th Cir. 1990).  In United States v. Futrell, 209 F.3d 1287

(11th Cir. 2000), we addressed the situation where a defendant convicted of a

conspiracy spanning from 1992 to 1998 was subject to restitution under a statute

that was enacted in 1996.  Id. at 1289.  We held that the application of the

restitution statute did not violate the Ex Post Facto Clause because the conspiracy

did not end until after the statute took effect.  Id. at 1290.

18 U.S.C. § 24(a) defines "federal health care offense" to include conspiracies to violate 18 U.S.C. §§ 287 and 1347, the offenses Valladares was charged with in counts one and two of the indictment.  As a result, § 982(a)(7) gave the district court the statutory authority to enter its forfeiture order.  In addition, because the pharmacy conspiracy continued after July 2002, when § 1349 became effective, the court's forfeiture order did not violate the Ex Post Facto Clause.  See Futrell, 209 F.3d at 1290.  Accordingly, the court did not err with respect to its forfeiture order.

**AFFIRMED.**