[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-16049

_____

D.C. Docket No. 1:12-cr-20230-UU-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ODALYS FERNANDEZ,
KELVIN SOTO,

Defendants-Appellants,

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(February 3, 2014)

Before PRYOR and JORDAN, Circuit Judges, and FRIEDMAN,[*] District Judge.

PER CURIAM:

---

[*] Honorable Paul L. Friedman, United States District Judge for the District of Columbia, sitting by designation.

Odalys Fernandez and Kelvin Soto appeal their convictions and sentences related to their participation in a scheme to defraud the Medicare program. The defendants raise a host of arguments on appeal, all of which lack merit. We **AFFIRM** the judgments of conviction and sentences.

## I. BACKGROUND

A federal grand jury returned an indictment that charged Odalys Fernandez and Kelvin Soto with one count each of conspiracy to defraud Medicare from August 17, 2007, to March 19, 2009, 18 U.S.C. § 1349, and with five counts of healthcare fraud for Fernandez and four counts for Soto, *id.* § 1347. The United States charged Fernandez with submitting false records that recorded purported visits to Klebe de la Cruz, Eulalia Garcia, Rolando Arece, and Caridad Pizzorno. And the United States charged Soto with submitting false records that recorded purported visits to Epifano Diaz, Leonida Barrios, Franklin Barnes, and Rosa Diaz.

The evidence at trial established that from 2007 to 2009 Fernandez and Soto, nurses in the home-health field, signed nursing notes and records that falsely stated that they provided nursing services to diabetic patients who were homebound and insulin-dependent. Fernandez and Soto submitted the records to a home health care agency, Ideal Home Health, which in turn sought reimbursement from the Medicare program and then paid the nurses a portion of that reimbursement as a kickback. Ideal paid its nurses $25 for each nursing note that recorded a visit to a

2

patient and an additional $25 if the nurse had recruited the patient. Many of the patients of Ideal were not diabetic and did not require insulin injections in their home, and Ideal did not require its nurses to visit the patients or provide nursing services to them.

A jury convicted Fernandez and Soto on all counts. The district court sentenced Fernandez to concurrent terms of 41 months of imprisonment, followed by concurrent periods of three years of supervised release, and ordered restitution in the amount of $240,369. The district court sentenced Soto to concurrent terms of 72 months of imprisonment, followed by concurrent periods of three years of supervised release, and ordered restitution in the amount of $727,418.

## II. STANDARDS OF REVIEW

Several standards of review govern this appeal. We review for an abuse of discretion evidentiary rulings to which a timely objection was made, *United States v. Dortch*, 696 F.3d 1104, 1110 (11th Cir. 2012), a refusal to give a requested jury instruction, *United States v. Joseph*, 709 F.3d 1082, 1093 (11th Cir. 2013), the disposition of a motion for a continuance of trial, *United States v. Graham*, 643 F.3d 885, 893 (11th Cir. 2011), and a refusal to dismiss a juror based on alleged misconduct, *United States v. Prosperi*, 201 F.3d 1335, 1340 (11th Cir. 2000). A district court abuses its discretion only if it "ma[kes] a clear error of judgment" or "applie[s] the wrong legal standard." *United States v. Frazier*, 387 F.3d 1244, 1259

3

(11th Cir. 2004). We review factual findings regarding the admissibility of evidence for clear error. *United States v. Petrie*, 302 F.3d 1280, 1289 (11th Cir. 2002). We review allegations of prosecutorial misconduct during closing arguments de novo, *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006), and we review the denial of a motion for a mistrial based on those comments for an abuse of discretion, *United States v. Dodd*, 111 F.3d 867, 869 (11th Cir. 1997).

## III. DISCUSSION

Fernandez and Soto present six arguments. First, Fernandez argues that the district court abused its discretion when it limited her cross-examination of a witness at trial.  Second, Fernandez argues that the district court abused its discretion when it denied her motion to remove a juror. Third, Soto argues that the district court abused its discretion when it admitted payroll reports from his employment at another home health agency. Fourth, Soto argues that the district court abused its discretion when it denied his request for a continuance or recess. Fifth, Fernandez and Soto argue that the United States engaged in prosecutorial misconduct in closing arguments. Sixth, Soto argues that the district court erred when it instructed the jury. These arguments fail, and we address each in turn.

*A. The District Court Did Not Abuse Its Discretion When It Limited Fernandez's Cross-Examination of a Witness at Trial.*

Fernandez argues that the district court violated her right to confront the witnesses against her, U.S. Const. Amend. VI, and abused its discretion when it

4

limited her cross-examination of Dr. Llantada, the primary care physician for de la Cruz, to questions related only to whether de la Cruz had diabetes and did not permit questions about de la Cruz's full medical history. "A defendant's sixth amendment rights are not infringed" when the court limits the cross-examination of a witness as long as the jury is "exposed to facts sufficient for it to draw inferences relating to the reliability of that witness" and defense counsel is able to "make a record from which he could argue why the witness might have been biased." *United States v. Maxwell*, 579 F.3d 1282, 1296 (11th Cir. 2009). We have explained that a defendant "is entitled only to an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defendant might wish." *Id.*

The limitation on cross-examination of Dr. Llantada did not violate Fernandez's rights. "Once there is sufficient cross-examination to satisfy the Sixth Amendment's Confrontation Clause, further questioning is within the district court's discretion." *United States v. Garcia*, 13 F.3d 1464, 1468 (11th Cir. 1994). The district court has "wide latitude" to impose "reasonable limits" on cross-examination, particularly with regard to whether "the information sought to be elicited is relevant." *Maxwell*, 579 F.3d at 1296 (internal quotation marks omitted). The United States called Dr. Llantada to prove that de la Cruz was not a diabetic and did not require insulin, and the district court was well within its discretion to

5

limit Fernandez's cross-examination of Dr. Llantada to issues of reliability or bias about that testimony.

### B. The District Court Did Not Abuse Its Discretion When It Refused Fernandez's Request To Remove a Juror.

The district court did not abuse its discretion when it denied Fernandez's motion to strike a juror during the trial and later when it denied Ferandez's motion for a new trial on the same ground. During voir dire, the district court read the names of the potential witnesses and asked if any of the jurors recognized the names; the potential witnesses were not present in the courtroom. Juror Malagan did not respond during voir dire, but after one of the doctors took the witness stand and testified for the United States, Malagan sent the district court a note in which she stated that she recognized the doctor from her temple. The district court asked about their relationship, and she stated that she did not know the doctor well and that she could evaluate the evidence impartially.

To obtain a new trial based on juror misconduct during voir dire, a party must "demonstrate that a juror failed to answer honestly a material question on *voir dire*" and "further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S. Ct. 845, 850 (1984); *see also United States v. Carpa*, 271 F.3d 962, 966–67 (11th Cir. 2001). We do not fault a juror for a mistaken, but honest answer to a question because "only those reasons that affect a juror's

6

impartiality can truly be said to affect the fairness of a trial." *Greenwood*, 464 U.S. at 556, 104 S. Ct. at 850. And the "determination of impartiality, in which demeanor plays such an important part, is particularly within the province of the trial judge." *United States v. Gabay*, 923 F.2d 1536, 1543 (11th Cir. 1991).

The district court did not abuse its discretion. The district court was entitled to determine that Juror Malagon honestly, but mistakenly, answered the question in voir dire, that she was not biased, and that her service as a juror did not affect the fairness of the trial. The juror promptly brought the mistake to the attention of the district court, but stated that she could remain impartial.

## C. The District Court Did Not Abuse Its Discretion When It Admitted Payroll Records from Soto's Employment at Another Home Health Agency.

Soto argues that the district court abused its discretion when it admitted into evidence payroll reports regarding his employment at Megamed, another home health agency that engaged in Medicare fraud, under the exception to hearsay for records of regularly conducted activity. Fed. R. Evid. 803(6). Federal Rule of Evidence 803(6) permits a court to admit hearsay evidence if the record was made at or near the time that someone with knowledge transmitted the recorded information; the record was kept in the course of a regularly conducted activity of a business; the regular practice of that activity included making the record; the testimony of the custodian of the records or another qualified witness proves all of these conditions; and "neither the source of information nor the method or

7

circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(A)–(E). Soto concedes that the records were timely made and that Megamed prepared them in the regular course of business, but he contends that the director of nursing who testified about the records did not "meet the requirements of a custodian of records" and that the reports are not trustworthy because of the fraudulent practices of the company. Neither of these arguments has merit.

First, the district court did not clearly err when it determined that the director of nursing was a qualified custodian of the reports for the purposes of the exception to hearsay for business records. "It is not necessary for the person who actually prepared the documents to testify so long as there is other circumstantial evidence and testimony to suggest the trustworthiness of the documents." *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1244 (11th Cir. 2009). The director of nursing testified that she had firsthand knowledge of the process by which the staff at Megamed used the nursing notes to prepare payroll reports and that the staff prepared the reports in the regular course of business. The district court did not clearly err when it found that the witness was sufficiently qualified to testify about the payroll reports.

Second, the district court did not clearly err when it found that the payroll reports were reliable. The district court discussed this issue at length with counsel and found that the payroll reports were reliable for the purpose of proving

8

payments to nurses, even if the business practices or underlying nursing notes were fraudulent. The record supports the finding by the district court that, although the nursing notes prepared by Soto were fraudulent, Megamed paid Soto based on the notes that he submitted. The factual finding by the district court that the payroll reports were reliable to prove payments to a nurse was not clearly erroneous. The district court did not abuse its discretion when it admitted the records.

*D. The District Court Did Not Abuse Its Discretion When It Denied Soto's Request for a Continuance or Recess.*

The district court did not abuse its discretion when it denied Soto's motion for a continuance of the trial so that Soto could review new evidence that the United States produced during trial. "Under certain circumstances, denial of a motion for continuance of trial may vitiate the effect of th[e] fundamental right [to assistance of counsel]." *United States v. Valladares*, 544 F.3d 1257, 1262 (11th Cir. 2008). But "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process"; instead, we look to "the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.* To establish an abuse of discretion for the denial of a motion for a continuance, the defendant must prove that the denial "resulted in specific substantial prejudice." *Id.* "Substantial prejudice exists when a defendant is unduly surprised and lacks an adequate opportunity to prepare

a defense or if the mistake substantially influences the jury." *United States v. Bailey*, 123 F.3d 1381, 1399 (11th Cir. 1997). To satisfy this burden, the defendant "must identify relevant, non-cumulative evidence that would have been presented if [his] request for a continuance had been granted." *Valladares*, 544 F.3d at 1262 (internal quotation marks omitted).

Soto has failed to prove substantial prejudice. The new evidence provided by the United States included pay records from a hospital where Soto worked, and the records proved that the hospital paid him for work allegedly performed when his nursing notes stated that he was visiting patients. Soto argues that, because the district court denied his motion for a continuance or recess, he was "unprepared to adequately explain" the overlaps when the United States cross-examined him on the issue. But he fails to identify "relevant, non-cumulative evidence" that he would have presented if the district court had given him more time to prepare, and he fails to explain how he would have answered questions differently on cross-examination. *Valladares*, 544 F.3d at 1262.

### E. The Prosecutor's Conduct During Closing Arguments Does Not Warrant Reversal.

Fernandez and Soto argue that the prosecutor engaged in misconduct during his rebuttal argument. Fernandez argues that the prosecutor misstated the evidence, and Soto argues that the prosecutor shifted the burden of proof to the defense. To

10

establish prosecutorial misconduct, Fernandez and Soto must prove that the remarks by the prosecutor were "improper" and that the remarks "prejudicially affect[ed] the[ir] substantial rights." *United States v. Eckhardt*, 466 F.3d 938, 947 (11th Cir. 2006). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." *Id.* But "[w]hen the record reveals sufficient independent evidence of guilt, any error [due to prosecutorial misconduct] is harmless." *Id.*

1. The Prosecutor's Comments During Rebuttal Do Not Warrant Reversal.

Fernandez argues that the prosecutor misstated the evidence when he argued in rebuttal that de la Cruz was at a lab having blood drawn when Fernandez purported to visit her at her home. The United States had admitted into evidence the report from the blood work and inferred from the report that de la Cruz was at the lab when her blood was collected. Fernandez's counsel interposed a timely objection to the argument, but the district court overruled the objection. And Fernandez later submitted, in her motion for a new trial, an affidavit from the lab supervisor who attested that de la Cruz's blood had not been collected at the lab.

We have explained that, "[w]hile a prosecutor may not exceed the evidence in closing argument, he may state conclusions drawn from the evidence." *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997) (citation omitted). And we

11

consider several factors to determine whether a prosecutor's arguments are improper: "whether the remarks were isolated, ambiguous, or unintentional;" "whether there was a contemporaneous objection by defense counsel;" "the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused;" and "the strength of the competent proof to establish the guilt of the accused." *Spencer v. Sec'y, Dep't of Corr.*, 609 F.3d 1170, 1182 (11th Cir. 2010) (internal quotation marks omitted). Even if the prosecutor's comments were improper, reversal is warranted only if prejudice occurred—that is, "when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different." *Eckhardt*, 466 F.3d at 947.

Fernandez raises a plausible argument that the prosecutor's remark exceeded the scope of evidence introduced at trial. Although the lab report was in evidence, it had not been introduced for the purpose of showing the whereabouts of Fernandez or de la Cruz, and had not been the subject of cross-examination. And although the prosecutor's comment was "isolated," not extensive, it did come at the end of his rebuttal argument, and defense counsel therefore had no opportunity to counter it. *Cf. Romine v. Head*, 253 F.3d 1349, 1369 (11th Cir. 2001); *United States v. Hands*, 184 F.3d 1322, 1333 (11th Cir. 1999). As a result, there was a possibility the jury could have been misled as to this one point, which was an important one in view of Fernandez's theory of defense.

12

Regardless of Fernandez's precise whereabouts, however, the United States produced overwhelming evidence at trial that Fernandez did not visit her patients every day, twice a day, to inject them with insulin. Thus, when considered in the context of the entire trial, we cannot conclude on this record that "but for the [prosecutor's] remarks, the outcome of the trial would have been different." *Eckhardt*, 466 F.3d at 947. "[T]he strength of the competent proof" establishing her guilt was more than sufficient for conviction. *Spencer*, 609 F.3d at 1182.

### 2. The Prosecutor Did Not Shift the Burden of Proof.

The prosecutor did not shift the burden of proof by arguing that Soto could have offered testimony from a handwriting expert to substantiate his defense that someone had forged his signature on the nursing notes. As a general rule, "[p]rosecutors must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence." *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992). But a prosecutor can explain to the jury that the defendant has subpoena powers like the government, especially in response to an argument by a defendant about the failure of the prosecutor to call a witness. *See United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998); *United States v. Musser*, 856 F.2d 1484, 1485–86 (11th Cir. 1988). Soto argued in closing that the United States did not call a handwriting expert to prove that Soto wrote his nursing notes, and the prosecutor responded

13

that Soto could have called a handwriting expert to prove that someone forged the notes. This comment was not improper.

But even if the comment was improper, Soto has failed to establish prejudice. "[T]he prejudice from the comments of a prosecutor which may result in the shifting of the burden of proof can be cured by a court's instruction regarding the burden of proof." *Simon*, 964 F.2d at 1087; *see also Hernandez*, 145 F.3d at 1439. The district court instructed the jury that "the defendant does not have to prove his or her innocence or produce any evidence at all" and that the United States has the burden to "prove guilt beyond a reasonable doubt." That instruction was sufficient to cure any improper comment about the handwriting expert.

*F. The District Court Correctly Instructed the Jury.*

Soto argues that the district court made two errors when it instructed the jury. First, he argues that the district court should have provided an instruction about good faith. Second, he argues that the district court should not have provided an instruction about deliberate ignorance.

1. Soto Was Not Entitled to a Jury Instruction About Good Faith.

In the light of the evidence presented at trial, the district court did not abuse its discretion when it refused to give the jury an instruction about good faith. A refusal by the district court to give an instruction that is requested by one of the parties amounts to an abuse of discretion only "where the requested instruction (1)

14

was correct, (2) was not substantially covered by the charge actually given, and (3) dealt with some point in the trial so important that failure to give the instruction seriously impaired the defendant's ability to conduct his defense." *Eckhardt*, 466 F.3d at 947–48; *see also United States v. Morris*, 20 F.3d 1111, 1114–16 (11th Cir. 1994). "We will only reverse if we are left with a substantial and eradicable doubt as to whether the jury was properly guided in its deliberations." *Eckhardt*, 466 F.3d at 948. Soto's requested instruction was correctly worded because the language is nearly identical to the pattern jury instructions of this Court. *See* Eleventh Cir. Pattern Jury Instr. 17 (Special) (2010). But the instruction about good faith was covered by other instructions, and the failure to give the instruction in the form requested did not seriously prejudice Soto's ability to conduct his defense.

The requested instruction was "substantially covered by the charge actually given," *Eckhardt*, 466 F.3d at 947, because the district court instructed the jury that the United States had to prove that Soto acted "knowingly," "willfully," and with the "intent to defraud." We have held that a district court did not err when it refused to give an instruction about good faith, but instead instructed the jury about specific intent, because a jury finding of specific intent necessarily excluded a finding of good faith. *See United States v. McNair*, 605 F.3d 1152, 1201 n.65 (11th Cir. 2010). And we have held that a district court did not err when it refused to give an instruction about good faith because the "concept[] w[as] substantially

15

included in the instruction that the criminal act must be done 'knowingly' or 'willfully.'" *United States v. Jordan*, 582 F.3d 1239, 1248 (11th Cir. 2009); *see also United States v. Walker*, 26 F.3d 109, 109–10 (11th Cir. 1994) (holding that an instruction about intent to defraud adequately addressed the defense of good faith).

Soto argues that the refusal to give the requested instruction seriously impaired his defense because his "theory of defense was that he was getting paid for seeing patients whom he believed were homebound diabetics," but Fernandez, not Soto, presented that defense at trial. Soto denied that he ever visited the patients named in the indictment and denied that his handwriting was on their patient forms. Soto cannot establish that his defense was "seriously impaired" by the absence of an instruction about good faith because his defense was not premised on the theory that he acted in good faith. *Eckhardt*, 466 F.3d at 948.

2. The District Court Correctly Instructed the Jury About Deliberate Ignorance.

The district court did not err when it instructed the jury about deliberate ignorance because the record supports the instruction. A deliberate ignorance instruction is warranted "when the facts support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." *United States v. Garcia-Bercovich*, 582

16

F.3d 1234, 1237 (11th Cir. 2009). The record establishes that Soto was aware of a high probability that Ideal and Megamed used his notes to defraud Medicare: he admitted that he did not know whether a nurse actually visited his patients; he did not recall the names of many of the patients he allegedly treated; he chose not to learn how Ideal and Megamed billed Medicare for the nursing notes that he submitted; and he "did not monitor the amount" of money he received from Ideal and Megamed for his nursing notes.

But the absence or presence of evidence of deliberate ignorance "does not matter" when "the jury could have convicted on an alternative, sufficiently supported theory of actual knowledge." *United States v. Kennard*, 472 F.3d 851, 858 (11th Cir. 2006). The United States presented overwhelming evidence of actual knowledge. The United States introduced evidence that Soto's handwriting appeared on nursing notes for patient visits that overlapped in time; his patients were not homebound and did not require nurse-assisted insulin injections; he willingly changed his nursing notes when the office administrator confronted him about time overlaps that might impair the ability of the company to collect reimbursements from Medicare; and he had been paid $172,000 over a 14-month period for patient services. If there was an error in the jury instruction about deliberate ignorance, it was harmless in the light of the overwhelming evidence of actual knowledge.

17

Soto argues that, even if the evidence supported an instruction about deliberate ignorance, the court erred by refusing to give his proposed instruction. Specifically, he argues that deliberate ignorance cannot establish intent for the purposes of a conspiracy charge. But this argument lacks merit. The district court instructed the jury about deliberate ignorance to help the jury understand the element of knowledge, not for the purpose of ascertaining Soto's intent. We have approved an instruction about deliberate ignorance when the instruction went to the element of knowledge and not willfulness. *See United States v. Schlei*, 122 F.3d 944, 974 (11th Cir. 1997). Because the district court instructed the jury only that deliberate ignorance can satisfy the element of knowledge, it did not err when it gave that instruction.

## IV. CONCLUSION

We **AFFIRM** Fernandez's and Soto's judgments of conviction and sentences.

18