[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10406

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

NELSON COBO HERNANDEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cr-00158-MSS-TGW-5

_____

Before JORDAN, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Nelson Cobo Hernandez appeals his sentence for conspiracy to commit wire fraud. After carefully reviewing the record and the parties' briefs, we affirm.

## I.

A federal grand jury indicted Hernandez and six codefendants on one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349. The indictment alleged that from May 2018 until May 2019, Hernandez conspired with Eduardo Lamigueiro, Roxana Ruiz, Bertanicy Garcia, Marcos Cobo Gonzalez, Junior Perodin Verges, and Jose Perez to commit wire fraud.

The government later filed a factual basis for the charge, alleging that Garcia, who worked for the Florida Department of Children and Families (DCF), accessed DCF's database during the conspiracy and obtained names and other personal identifying information of its clients. She transmitted the information to Lamigueiro, Lamigueiro passed it to the other conspirators, and the conspirators created false driver's licenses using the stolen information. The conspirators, including Hernandez, then posed as the victims and purchased expensive merchandise using credit accounts they opened in the victims' names. The government's factual basis alleged that Garcia provided personal identifying

information of more than 2,100 individuals to Lamigueiro, resulting in over $300,000 in loss.

At Hernandez's change of plea hearing, Hernandez stated that the interpreter had read the statement of facts to him and that there was nothing in the statement of acts that he disputed or disagreed with. Defense counsel clarified that Hernandez admitted that it was his picture on fake driver's licenses with the name and identification of others and that he used those licenses to open accounts at stores and purchase merchandise without the individuals' authorization. The district court accepted Hernandez's plea and sentenced him to 26 months and 24 days of incarceration, to be followed by 3 years of supervised release. It also ordered him to pay $212,918 in restitution and waived imposition of a fine. This appeal followed.

## II.

On appeal, Hernandez argues that the district court erred in (1) holding him accountable for a loss amount of $212,018 for purposes of determining his Sentencing Guidelines offense level; (2) ordering him to pay restitution in that amount when he was unlikely to be able to pay it; and (3) failing to grant a downward departure under § 5K2.23 of the Sentencing Guidelines giving him credit for the entire 19.8-month sentence he served in prison for three state convictions. We consider each argument in turn.

## A.

We review the district court's determination of the amount of loss attributable to the defendant for clear error. *United States v. Cavallo*, 790 F.3d 1202, 1232 (11th Cir. 2015); *see United States v. Valladares*, 544 F.3d 1257, 1267 (11th Cir. 2008) (reviewing the district court's determination of relevant conduct under U.S.S.G. § 1B1.3 for clear error). "We will reverse for clear error only when we are left with a definite and firm conviction that a mistake has been committed." *United States v. Thomas*, 818 F.3d 1230, 1239 (11th Cir. 2016) (quotation omitted).

For offenses involving fraud, the Sentencing Guidelines provide an increase to a defendant's offense level depending on the amount of loss that resulted from the fraud. U.S.S.G. § 2B1.1(b)(1). The amount of loss used to calculate the defendant's offense level is the greater of the actual loss or the intended loss. *Id.* at cmt. n.3(A). "Actual loss" is "the reasonably foreseeable pecuniary harm that resulted from the offense," and "reasonably foreseeable pecuniary harm," in turn, means "pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." *Id.* at cmt. n.3(A)(i), n.3(A)(iv).

The sentencing court must calculate the defendant's Guidelines offense level based on his own conduct, conduct that he aided or abetted, and in a case that involved joint criminal activity, the conduct of others if that conduct was (1) within the scope of the jointly undertaken criminal activity, (2) in furtherance of that

criminal activity, and (3) reasonably foreseeable in connection with that criminal activity. U.S.S.G. § 1B1.3(a)(1)(A)–(B). In determining whether a coconspirator's conduct was within the scope of jointly undertaken criminal activity, the court must first determine the scope of the activity that the defendant agreed to jointly undertake. *Id.* § 1B1.3 cmt. n.3(B). "In doing so, the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." *Id.*

The mere fact that a defendant was aware that he was part of a larger scheme is insufficient to hold him accountable for the conduct of others in the conspiracy, but actions that suggest that the defendant was "actively involved" in a criminal scheme permit the inference that the defendant agreed to "jointly undertake" that scheme. *United States v. Whitman*, 887 F.3d 1240, 1248 (11th Cir. 2018) (quotation omitted). An agreement may be inferred where, "even though the various participants in the scheme acted on their own behalf, each of the participants knew each other and was aware of the other's activities, and they aided and abetted one another by sharing information necessary for the operation of the scheme." *Id.* at 1248–49 (quotation omitted).

Here, Hernandez acknowledges that he understood the nature of the scheme and participated in it by using fake driver's licenses to open accounts at stores and purchase merchandise in the victims' names without their permission. He concedes that he knowingly participated in a conspiracy that involved Lamigueiro as the coordinator or "hub" of the conspiracy and himself and

Gonzalez (who was Hernandez's nephew) as a "unified 'spoke.'" But he objects to being held responsible for loss amounts attributable to Garcia, Perez, and Ruiz because, he says, he did not know those conspirators and he was not directly involved in their fraudulent transactions.[1]

But evidence of a defendant's direct involvement in a coconspirator's criminal activity is not necessary to show that the activity was part of a jointly undertaken criminal scheme.  The government is not required to show that the defendant discussed or even knew the details of his coconspirators' actions, as long as the defendant was "fully aware of the objective" of the conspiracy and "was actively involved" in the scheme.  *Id.* at 1249 (quoting *United States v. McCrimmon*, 362 F.3d 725, 732 (11th Cir. 2004)).  And a "district court need not make a precise determination of loss amount, but only a reasonable estimate of it given the available information," including evidence presented at sentencing and undisputed statements in the presentence investigation report.  *United States v. Moss*, 34 F.4th 1176, 1190 (11th Cir. 2022).

Evidence at sentencing and undisputed statements in Hernandez's presentence investigation report showed that Hernandez communicated with Lamigueiro via text message regarding the

---

[1] The loss amount attributed to Verges is not at issue in this appeal because Hernandez was not held accountable for that amount.  The district court calculated the loss attributable to Hernandez ($212,918) by subtracting the amount of loss attributed to Verges ($95,000) from the loss attributed to the seven-person conspiracy as a whole ($307,918).

conspiracy, sharing victims' personal identifying information, photographs of receipts and merchandise, and passport-style photographs of some of his codefendants—including Perez and Ruiz—along with other information necessary to create fake driver's licenses with their pictures. Some of the victim information that Hernandez sent to Lamigueiro was used by Perez less than a week later to open a credit account at a retail store and purchase thousands of dollars' worth of merchandise, and Lamigueiro also sent Hernandez photographs of receipts from fraudulent purchases using the information from victims that Perez impersonated.

This evidence supported an inference that Hernandez understood the overall objective of the conspiracy, knew of Perez's and Ruiz's participation in it, and was actively involved in facilitating their use of the victims' personal identifying information as part of the scheme. As to Garcia, it is clear that Hernandez knew that the group had a source from which it obtained the victims' information that he and his other coconspirators used to create fake driver's licenses and open accounts in the victims' names, even if he did not know that source's identity. The district court did not clearly err in determining that Hernandez knew or reasonably should have known that pecuniary harm resulting from Garcia's theft and Perez's and Ruiz's use of the victims' personal identifying information was a potential result of the conspiracy. *See* U.S.S.G. § 2B1.1 cmt. n.3(A)(iv).

### B.

Hernandez argues that the district court erred in imposing restitution in an amount that he likely will be unable to pay. Ordinarily, we review the legality of an order of restitution de novo, the underlying factual findings for clear error, and the sentencing court's determination of restitution value for abuse of discretion. *Moss*, 34 F.4th at 1192; *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007). But when a party objects to a restitution order for the first time on appeal or appeals on different grounds than those raised in the district court, our review is for plain error only. *Cani v. United States*, 331 F.3d 1210, 1212 (11th Cir. 2003); *see United States v. Corbett*, 921 F.3d 1032, 1035 (11th Cir. 2019). Under plain error review, we may correct an error if the defendant demonstrates that (1) an error occurred; (2) the error was plain; (3) the error affected his substantial rights; and (4) the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Hesser*, 800 F.3d 1310, 1324 (11th Cir. 2020) (alteration in the original) (quotation omitted).

The district court did not plainly err in imposing restitution without regard to Hernandez's ability to pay. To the contrary, the court was required under the Mandatory Victims Restitution Act of 1996 (MVRA) to order restitution "in the full amount of each victim's losses as determined by the court and *without consideration of the economic circumstances of the defendant*." 18 U.S.C. § 3664(f)(1)(A) (emphasis added); *see id.* § 3663A(a)(1), (c)(1)(A)(ii). The amount of restitution must be the actual loss

suffered by the victims, which in this case is the same amount calculated by the district court for purposes of determining Hernandez's Guidelines offense level. *See Cavallo*, 790 F.3d at 1239.

Hernandez's argument that the district court was required to consider his ability to pay when determining the amount of restitution is based on the pre-MVRA version of 18 U.S.C. § 3664 and our precedents applying that earlier version. *See United States v. Fuentes*, 107 F.3d 1515, 1529 (11th Cir. 1997); *United States v. Remillong*, 55 F.3d 572, 574 (11th Cir. 1995). As we have explained, "the district court is not required, nor does it have the discretion, to consider the offender's ability to pay when ordering restitution under the MVRA." *United States v. Futrell*, 209 F.3d 1286, 1292 (11th Cir. 2000).

## C.

Last, Hernandez argues that the district court should have granted his request for a downward departure under U.S.S.G. § 5K2.23 to give him credit for a 19.8-month consolidated sentence that was imposed for three separate state crimes that he committed at various times in 2018. At sentencing, Hernandez acknowledged that only one of the three crimes was relevant conduct under § 5K2.23, but he nonetheless requested a downward departure that credited him for the entire 19.8 months.[2] Hernandez's counsel

---

[2] To the extent that Hernandez argues that all three state crimes were relevant conduct for his federal offense and should not have been counted when determining his Guidelines criminal history category, we decline to consider that

added that if the court was unwilling to grant a departure for the full sentence, he would "ask for the Court to essentially divvy it up and give him some credit" against his federal sentence. The district court agreed that a partial credit was appropriate and granted a downward departure of six months and ten days, or just under a third of the state sentence.

We lack jurisdiction to consider Hernandez's argument that the downward departure granted by the court was inadequate. *See United States v. Winingear*, 422 F.3d 1241, 1245–46 (11th Cir. 2005). Under 18 U.S.C. § 3742(a), the district court's discretionary decision not to grant a downward departure is unreviewable "so long as the district court did not incorrectly believe that it lacked the authority to apply a departure." *Id.* at 1245. Hernandez does not dispute that the district court here recognized its authority to depart downward, so we cannot review the court's decision to deny Hernandez the full relief he sought. *See id.* at 1245–46; *see also United States v. Dudley*, 463 F.3d 1221, 1228 (11th Cir. 2006) (we assume that the district court understood its authority to depart downward absent any contrary indication in the record).

---

argument because his counsel affirmatively represented to the sentencing court that two of the state crimes were *not* relevant conduct. Doc. 410 at 46, 49, 51. *See United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) (we will not address, even for plain error, a claim challenging an action that the defendant induced the district court to make or expressly acknowledged as appropriate).

## III.

For the reasons discussed above, we affirm Hernandez's conviction and sentence.

**AFFIRMED.**